**THOMAS, HEAD & GREISEN EMPLOYEES TRUST; Ronald E. Greisen; Henry P. Head, Plaintiffs–Appellees,**

v.

**Jack BUSTER, Defendant–Appellant,**

and

**Terry D. Parks and Northern Financial, Defendants.**

No. 92–36732.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 4, 1993.

Decided May 18, 1994.

A. Lee Petersen, Law Offices of A. Lee Petersen, Anchorage, AK, for defendant-appellant.

Jean E. Kizer, Bliss Riordan, Anchorage, AK, for plaintiffs-appellees.

Before: GOODWIN, HUG and FERGUSON, Circuit Judges.

Opinion by Judge HUG; Dissent by Judge FERGUSON.

HUG, Circuit Judge:

This appeal concerns the investment by an ERISA-regulated Employee Trust Fund in deed of trust notes secured by real property. The Trust purchased various notes from Northern Financial, a general partnership comprised of Jack Buster and Terry Parks. Appellant Buster challenges the district court's determination that he served as a fiduciary to the Trust, and that he was liable' to the Trust for breach of fiduciary duty for misrepresentations made with respect to the sale of deed of trust notes. We affirm.

## I.

### BACKGROUND

Thomas, Head & Greisen Employees Trust ("Trust") is an employee trust fund subject to the Employee Retirement Income Security Act ("ERISA"). The Trust was established by Thomas, Head & Griesen, a professional corporation of certified public accoun-tants. Jack Buster developed a business relationship with the trustees of the Trust, Henry Head and Ronald Greisen ("Trustees"), whereby Buster would locate and investigate deed of trust notes for investment by the Trust. Buster earned a commission from the sale of these notes.

In 1983, Buster joined Terry Parks and formed a general partnership, Northern Financial. Northern Financial continued to provide investment services to the Trust, and the Trust continued to purchase notes secured by deeds of trust. During 1986, the Trust purchased four such notes from Northern Financial, referred to as the Bergin, Kern, Falkenstein and Smith notes. Subsequent to the purchase, the Trust discovered that Northern Financial had made numerous misrepresentations with respect to each of those notes.

On February 24, 1989, the Trust filed suit in federal district court alleging losses in excess of $142,000 on the Bergin, Kern and Falkenstein notes. The Smith note was not a subject of the litigation because Buster admitted the misrepresentations and guaranteed the Trust a 20 percent return on its investment. Although the suit alleged numerous statutory violations, the case was tried primarily on the basis of a breach of fiduciary duty under ERISA. After a three-day bench trial, the district court ruled that Northern Financial and its partners were fiduciaries to the Trust under ERISA, and that they had breached their fiduciary duties. The court awarded damages in the amount of $142,745.71. Buster appealed. A companion appeal brought by co-defendant Terry Parks was dismissed by stipulation pursuant to Federal Rule of Appellate Procedure 42(b).

## II.

### FIDUCIARY STATUS

The primary issue in this appeal concerns Buster's status as a fiduciary within the meaning of ERISA. Buster challenges the district court's finding that he was a fiduciary and its ultimate conclusion that he was liable for breach of fiduciary duty. The findings upon which Buster bases his appeal are essentially factual issues, and therefore the

court's findings cannot be set aside unless they are "clearly erroneous." Fed.R.Civ.P. 52(a). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Service Employees Int'l Union v. Fair Political Practices Comm'n*, 955 F.2d 1312, 1317 n. 7 (9th Cir.) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985)) (internal quotations omitted), *cert. denied*, —— U.S. ——, 112 S.Ct. 3056, 120 L.Ed.2d 922 (1992).

ERISA provides three ways in which one can acquire fiduciary status: (1) exercising discretionary authority or control over management of the plan or disposition of its assets; (2) rendering investment advice for a fee or other compensation; or (3) exercising discretionary authority in the administration of the plan. 29 U.S.C. § 1002(21)(A) (1988). The district court determined that Buster fell within the second definition of fiduciary, which states that a person acquires such status if "he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so." 29 U.S.C. § 1002(21)(A)(ii).

The Department of Labor issued regulations that further define "rendering investment advice" within the meaning of ERISA. The relevant provision states:

(c) *Investment advice.* (1) A person shall be deemed to be rendering "investment advice" to an employee benefit plan, within the meaning of [29 U.S.C. § 1002(21)(A)(ii) ] only if:

(i) Such person renders advice to the plan as to the value of securities or other property, or makes recommendation as to the advisability of investing in, purchasing, or selling securities or other property; and

(ii) Such person either directly or indirectly....

. . . .

(B) Renders any advice ... on a regular basis to the plan pursuant to a mutual agreement, arrangement or understanding, written or otherwise, between such person and the plan ... that such services will serve as a primary basis for investment decisions with respect to plan assets, and that such person will render individualized investment advice to the plan based on the particular needs of the plan regarding such matters as, among other things, investment policies or strategy, overall portfolio composition, or diversification of plan investments.

29 C.F.R. § 2510.3–21(c)(1) (1992).

Courts have recognized that an investment advisor to an ERISA Trust may be deemed a fiduciary of the Trust. *See Schetter v. Prudential–Bache Securities Inc.*, 695 F.Supp. 1077, 1083 (E.D.Cal.1988); *Stanton v. Shearson Lehman/American Express, Inc.*, 631 F.Supp. 100, 103–104 (N.D.Ga.1986). Moreover, the definition of fiduciary under ERISA should be liberally construed. *See Consolidated Beef Indus. Inc. v. New York Life Ins. Co.*, 949 F.2d 960, 964 (8th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1670, 118 L.Ed.2d 390 (1992).

The district court made factual findings to support its conclusion that Buster was a fiduciary within the meaning of ERISA. Specifically, the court found that: (1) Buster provided individualized investment advice; (2) the advice was given pursuant to a mutual understanding; (3) the advice was provided on a regular basis; (4) the advice pertained to the value of the property or consisted of recommendations as to the advisability of investing in certain property; and (5) the advice was rendered for a fee. All five factors are necessary to support a finding of fiduciary status. 29 U.S.C. § 1002(21)(A) (fee); 29 C.F.R. § 2510.3–21(c)(1)(i) (value of property, advisability of investing in property); 29 C.F.R. § 2510.3–21(c)(1)(ii)(B) (regular basis, mutual agreement, individualized advice). Buster challenges each of these findings.

*A. Individualized Investment Advice*

■ Buster asserts that no evidence exists to support the district court's finding that he provided individualized investment advice. Rather, he argues that he was merely selling a product to the Trust. We disagree.

Regulations interpreting ERISA provide that a person may attain fiduciary status by rendering individualized investment advice "based on the particular needs of the plan regarding such matters as, among other things, investment policies or strategy, overall portfolio composition, or diversification of plan investments." 29 C.F.R. § 2510.3-21(c)(1)(B). The evidence presented at trial established that Buster engaged in regular meetings with the Trustees, during which they discussed investment strategies, the need for diversification, and the criteria used by Buster to determine which investments were suitable for the Trust.

Buster was providing investment advice to sophisticated customers, but this does not affect the finding that he was rendering individualized investment advice nonetheless. Moreover, Buster's assertion that he was unable to provide individualized investment advice because he had not been given the investment portfolio or trust documents similarly lacks merit. The relationship of the parties, which developed over the course of nine years, coupled with the evidence of regular meetings between Buster and the Trustees to discuss investment strategy, provided Buster with sufficient information about the Trust to enable him to render individualized investment advice.

Buster's reliance on *Farm King Supply, Inc. v. Edward D. Jones & Co.*, 884 F.2d 288 (7th Cir.1989), is misplaced. In *Farm King,* the court concluded that the brokerage firm was not a fiduciary to an ERISA plan because it had not agreed to render "individualized investment advice" upon which the Plan would rely as a primary basis for investment decisions. The court specifically found that the alleged fiduciary's recommendations as to investments did not amount to advice as to investment strategy, overall portfolio composition or diversification of assets. *Id.* at 294. Rather, the brokerage firm in *Farm King* acted only as a sales broker, and its activities consisted of individualized solicitations designed to obtain business from a lucrative customer. *Id.*

An inference from *Farm King*, which suggests that a fiduciary must review an entire portfolio in order to give "individualized investment advice [ ] based on the particular needs of the plan," *id.,* is inappropriately applied to the present case. Here, an investment advisor rendered advice as to one type of investment and professed to understand the Trust's needs in that area. The record reflects that Buster advised the Trust about, and recommended the purchase of, virtually its entire portfolio of deed of trust notes.

The Eighth Circuit's opinion in *Consolidated Beef Industries,* which concluded that a fiduciary relationship did not exist between a life insurance salesman and the trustees of a company's employee retirement plan, is similarly unavailing. 949 F.2d at 964-65. The Eighth Circuit concluded that the insurance salesman was not acting as a fiduciary, but rather was merely selling his company's financial products to the plan. Contrary to Buster's argument, significant differences exist between *Consolidated Beef* and the present case. First, there is an important distinction between an agent or broker selling uniform commercial products of a reputable insurance company and the sale of deed of trust notes secured by real property with highly individualized characteristics. Those who invest in deed of trust notes must have an appreciation of the risks involved with such investments. Second, the *Consolidated Beef* case does not reflect the same level of interrelationship between the sales agent and the trust that is demonstrated by the nine and one-half-year relationship between the parties in the present case. Thus, we conclude that the district court did not clearly err in determining that Buster was providing individualized investment advice to the Trust.

### B. Mutual Agreement

■ Buster asserts that he never agreed to serve in a fiduciary capacity to the Trust as part of Northern Financial. The appellees acknowledge that there was not a written document memorializing their agreement, and that Buster was never added to the trust agreement as a fiduciary. Although a mutual agreement must be found to exist between the parties, the agreement need not be in writing nor must it specify that the party was to act as a fiduciary. Rather, the party need only agree to provide

advice that is the primary basis for the Plan's investment decisions. *Farm King,* 884 F.2d at 293. "[A]n agreement or understanding must have existed between the parties, not necessarily that [the defendant] would serve as a fiduciary, but that [he] would provide to the Plan individualized investment advice which would be the primary basis for the Plan's investment decisions." *Id.*

The Eighth Circuit addressed this issue in *Olson v. E.F. Hutton & Co., Inc.,* 957 F.2d 622, 624 (8th Cir.1992). There, trustees of two employee benefit plans brought suit against a securities broker to recover losses caused by the excessive buying and selling of certificates of deposit on the trust's account. The district court granted summary judgment in favor of the defendants on the basis that there was no evidence of an actual agreement between the parties. *Id.* at 627. The Eighth Circuit reversed the district court's decision and remanded because the record demonstrated to a degree sufficient to withstand summary judgment that the parties had an understanding that the broker's investment advice would serve as the primary basis for the investment decisions of the plan. *Id.*

■ The facts in the present case support a finding that the requisite mutual agreement existed between the parties. Buster's relationship with the Trust spanned a period of over nine years, involved the investment of over $700,000, and affected over 40 percent of the Trust's assets. Moreover, evidence presented at trial established that the parties met frequently to discuss investment strategy and diversification, as well as the criteria by which the notes would be selected. The agreement between the Trust and Buster required Buster to locate suitable investments, evaluate them and make recommendations to the Trust. The fact that the Trust acted so promptly on Buster's recommendations further evidences the existence of the requisite agreement.

■ Furthermore, it is irrelevant that Buster did not believe that he was a fiduciary. "[An] alleged fiduciary's state of mind is not determinative of fiduciary status under ERISA." *McNeese v. Health Plan Marketing, Inc.,* 647 F.Supp. 981, 985 (N.D.Ala.

1986). *See also Donovan v. Mercer,* 747 F.2d 304, 308 n. 4 (5th Cir.1984) ("[A] person's state of mind does not determine his or her fiduciary status under ERISA."); *Kerns v. Benefit Trust Life Ins. Co.,* 790 F.Supp. 1456, 1460 (E.D.Mo.1992), *aff'd,* 992 F.2d 214 (8th Cir.1993); *Successor Trust Committee v. First State Bank,* 735 F.Supp. 708, 716 (W.D.Tex.1990). The fact that Buster did not believe that he was a fiduciary to the Trust is of no consequence. We conclude that the district court's determination that the requisite mutual agreement existed was well supported by the evidence and was not clearly erroneous.

### C. "Regular Basis" Requirement

■ A finding that the investment advisor rendered advice on a "regular basis" is essential to a determination that a fiduciary relationship existed. *American Federation of Union Local 102 v. Equitable Life Assurance Society,* 841 F.2d 658, 664 (5th Cir. 1988). We agree with the district court that the facts support a finding that Buster rendered investment advice to the Trust on a regular basis. The fact that the Trust purchased 61 deed of trust notes from Buster over a nine and one-half-year period, as a result of regular meetings, reflects the regularity of the advice.

Moreover, Buster gave far more regular investment advice than the investment advisor in *Schloegel v. Boswell,* 994 F.2d 266 (5th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 440, 126 L.Ed.2d 374 (1993). In that case, the plaintiff brought a lawsuit alleging breach of fiduciary duty against an insurance salesman who allegedly induced an ERISA-regulated profit sharing plan to invest in certain life insurance policies, the purchase of which violated federal tax regulations governing tax-deferred profit sharing plans. *Id.* at 268. The Fifth Circuit concluded that the record did not support a finding that the defendant "rendered investment-type advice to the Profit Sharing Plan *on a regular basis.*" *Id.* at 273. The plan trustees identified only a few, isolated instances in which the insurance agent gave investment advice. Such a situation is far different from the present case in which regular meetings be-

tween Buster and the Trustees resulted in the purchase of 61 deed of trust notes, over a nine and one-half-year period. The district court's conclusion was not clearly erroneous.

#### D. Advice as to Value of Securities

■ "A person shall be deemed to be rendering 'investment advice'" if he advises "as to the value of securities or other property, or makes recommendation[s] as to the advisability of investing in, purchasing, or selling securities or other property." 29 C.F.R. § 2510.3–21(c)(1)(i).

Buster made recommendations as to the advisability of investing in certain deed of trust notes. Specifically, he provided information to the Trustees as to the value of various deed of trust notes by virtue of the yield calculations, mortgage analyses, and price information. He also provided descriptions of the property, and information pertaining to the payor's payment history and the payor's employment. We conclude that these details clearly relate to the value of the notes because they reflect the likelihood that the notes would be paid in full. Thus, the district court's finding that Buster rendered advice as to the value of securities is not clearly erroneous, particularly in light of the lack of conflicting evidence in the record.

#### E. Receipt of Compensation

■ ERISA provides that a person is a fiduciary if "he renders investment advice for a fee or other compensation, direct or indirect." 29 U.S.C. § 1002(21)(A)(ii). Buster typically received a 10 percent commission on the sale of deed of trust notes to the Trust. On the particular notes at issue in the present case, Buster purchased various deed of trust notes, and subsequently resold them to the Trust at a higher price. Thus, Buster's compensation amounted to the difference between the amount at which he purchased the deed of trust notes, and the price at which he was able to resell them to the Trust. Buster asserts that this compensation is not a fee for investment advice, but rather represents the profit earned by a salesperson for the sale of his product. We disagree. The commission earned on the sales and the profit earned by the spread represent "fee[s] or other com-

pensation" for the rendering of investment advice. The court's conclusion is not clearly erroneous.

Our review of the five requisite elements leads us to conclude that Buster rendered individualized investment advice for a fee within the meaning of ERISA. We find that the existence of a fiduciary relationship in the present case is not affected by the fact that deed of trust notes were bought by Buster, and subsequently resold to the Trust. In serving as an investment adviser to the Trust for a nine and one-half-year period, Buster operated as a fiduciary. This status carries with it the responsibility to act in the best interest of the client at all times, and to serve with scrupulous good faith. Buster's conduct in this case clearly violated this standard, regardless of how the various transactions were structured. We will not permit a fiduciary to avoid his responsibilities merely by structuring a financial transaction so as to achieve that goal. The district court's conclusion that Buster served the Trust as a fiduciary was proper.

### III.

### CAUSATION

Buster also challenges the district court's conclusion that misrepresentations pertaining to the three notes in question caused the Trust losses in excess of $140,000. Specifically, Buster asserts that there was insufficient evidence to support the court's finding that the statements were material, and that they were relied upon by the Trust. We reject Buster's contentions and agree with the district court that Buster's actions were responsible for the losses to the Trust. Each of the three notes at issue will be discussed individually.

#### A. The Bergin Note

■ The district court found that Buster misrepresented that the Bergin property was located in the Wonder Park subdivision of Anchorage when, in fact, it was located next to railroad tracks in the Spenard area of Anchorage, and also found he misrepresented the assessed value of the property. The court further found that Buster failed to

disclose that there was insufficient access to the property. We reject Buster's contention that the Trustees' failure to discover these defects reflects negligence on their part, absolving him of responsibility for the losses. These representations were material, and the Trustees reasonably relied on the statements. The findings of the district court are not clearly erroneous.

### B. The Falkenstein Note

 With respect to the Falkenstein note, the district court found that Buster misrepresented that Falkenstein owned a boat and an airplane, that he had made a $20,000 down payment on the property, and that he was married and his wife was employed. The district court also found that Buster made substantial misrepresentations about the value of improvements on the land, and substantially overstated the acreage of the property. Again, we reject Buster's assertion that these statements were not material. Given the significance of these statements in enabling the Trust to evaluate the likelihood of repayment, the district court's findings as to materiality and reliance are not clearly erroneous.

### C. The Kern Note

 The district court also found that Buster misrepresented material facts concerning the Kern property. For example, Buster misrepresented the employment of the payor on the property, the identity and employment of the payor's spouse, and that the property had been inspected. The facts of employment and spouse's income, as well as whether an inspection occurred, are material to the value of notes secured by deeds of trust. The district court's decisions with respect to materiality and reliance are not clearly erroneous.

Because the district court's conclusions with respect to materiality and reliance cannot be overturned unless the findings are clearly erroneous, the district court's determination that these misstatements caused the Trust losses in excess of $140,000 must be upheld.

### IV.

### CONCLUSION

We have thoroughly reviewed the remaining issues raised on appeal and cross appeal. We find them to be without merit. The district court's determination that Buster was engaged in a fiduciary relationship with the Trust is proper. The finding that Buster breached his fiduciary duties and the subsequent award of damages are also proper. Based upon the foregoing analysis, the district court's decision is **AFFIRMED.**

FERGUSON, Circuit Judge, dissenting:

In this case, a professional corporation of certified public accountants formed an ERISA trust in which its members were the major beneficiaries. The Trust made returns of 20% per annum on its money by gambling on the Alaskan real estate market. When the market dropped, the Trustees succeeded in convincing the district court that it was not their mismanagement of the Trust that was to blame for not making a 20% profit on three real estate transactions, but rather the fault of real estate mortgage brokers Jack Buster and Terry Parks, the persons who sold them the mortgage investments.[1] Instead of granting the Trustees' claims on common law fraud, the district court federalized their state tort claims by concluding that one who sells his own property to an ERISA trust is a financial advisor.

In 1977, Buster formed with another person the limited partnership Kavik Mortgage Investors for the purpose of investing in notes secured by real estate deeds of trust. The ERISA trust invested $50,000 and became a limited partner. The partnership agreement followed standard partnership law, providing that the general partner was a fiduciary to the limited partners. *See generally* 1916 Uniform Limited Partnership Act, codified in Alaska Statute § 32.11.010 (1993), *et seq.*

Subsequently, Buster and Parks formed the Northern Financial partnership. Northern Financial bought deed of trust notes at a discount to sell to others for profit. From

---

1. The Trust did not lose money on the transac- tions. It made a net gain of 6%.

1983 to 1986, Northern Financial sold to the Trust thirty-six notes at a cost of $727,000. These investments comprised about 40% of the trust assets.

Buster made significant and overly speculative reports regarding the value of at least four of the notes. When these four notes failed to yield a 20% return after the collapse of the Alaska real estate market, the Trust brought this action alleging violations of RICO, mail and securities fraud, state law causes of action, common law fraud and ERISA. The action on one note was settled because Buster promised to make good on his guarantee of a 20% return on that note. On the other three notes, the district court ruled solely on the ERISA claim.

The majority errs in three major respects. First, it applies the wrong standard of review to the district court's conclusion that Buster is an investment advisor under ERISA. Second, it erroneously assumes that Buster was an investment advisor under ERISA because of his status as a general partner and fiduciary in the Kavik Mortgage Investors partnership. Third, it creates an inter-circuit conflict with the Fifth, Seventh, and Eighth Circuits.

### Standard of Review

The majority errs in applying the clear error rule to the district court's finding that Buster was an investment advisor under ERISA. The clear error rule governs only historical facts, not the legal conclusions to be drawn from those facts. *In re J.A. Thompson & Son, Inc.*, 665 F.2d 941 (9th Cir.1982). This court must review the legal conclusion that Buster was an investment advisor under ERISA *de novo*. *Batchelor v. Oak Hill Medical Group*, 870 F.2d 1446, 1447 (9th Cir.1989) (citing *Trustees of Amalgamated Ins. Fund v. Geltman Indus., Inc.*, 784 F.2d 926, 929 (9th Cir.), *cert. denied*, 479 U.S. 822, 107 S.Ct. 90, 93 L.Ed.2d 42 (1986)). For the reasons stated below, upon a *de novo* review of the district court record, the majority should have concluded that Buster was not an investment advisor for a fee pursuant to 29 U.S.C. § 1002(21)(A)(ii) and thus is not subject to ERISA.

### Investment Advisor Status

The majority incorrectly assumes that a fiduciary under state law to a trust protected under ERISA is necessarily also an ERISA fiduciary. The earlier partnership agreement between the parties expressly provided that the general partners were fiduciaries of the limited partners. The district court and the majority assert that once a fiduciary relationship is formed, it exists forever. Assuming that to be true, the fact that a person is a fiduciary under state law does not make him an investment advisor under ERISA. 29 C.F.R. 2510.3–21(c)(1) (1992). *See also Farm King Supply, Inc. v. Edward D. Jones & Co.*, 884 F.2d 288, 293 (7th Cir.1989). An investment advisor is always a fiduciary. But a fiduciary is not always an investment advisor. *Id.* The majority and district court simply put the cart before the horse.

The majority's analysis fails at two levels. First, one who sells his own property does not become an investment advisor for a fee under ERISA. *See e.g. Consolidated Beef Indus., Inc. v. New York Life Ins. Co.*, 949 F.2d 960, 965 (8th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 1670, 118 L.Ed.2d 390 (1992).

In *Consolidated Beef*, the Eighth Circuit concluded as a matter of law that the seller of a 401(k) turnkey plan "was not providing investment advice ... [but rather] was merely a salesperson earning commissions and not a fiduciary under ERISA." 949 F.2d at 965. Like the *Consolidated Beef* sales agent, Buster worked on a commission basis and recommended the purchase of his company's "products" only, rather than that of many companies. *Id.* Buster sought to sell only those investments which the Northern Financial partnership acquired. His self-interest and loyalties should have been obvious to all parties involved.

Second, viewed on a more general level, a sales broker should not be considered an ERISA fiduciary simply because he is good at his job, "matching the customer's desires with available inventory," even where the sales broker promotes the products of many companies. *Farm King Supply, Inc. v. Ed-*

*ward Jones & Co.*, 884 F.2d 288, 292 (7th Cir.1989).

In *Farm King,* the Seventh Circuit concluded that the seller was not an ERISA investment advisor. The court held that all the seller did was "select a few securities from its limited pool of commissionable securities and propose to the trustees that the Plan purchase from among this select group." 884 F.2d at 292. It considered appellant's "discretionary authority or control" argument under 29 U.S.C. § 1002(21)(A)(i) and its "rendering investment advice" argument under 29 U.S.C. § 1002(21)(A)(ii) and found that the seller was not a fiduciary under either prong.

The *Farm King* court noted that "stock brokers or dealers who recommend certain securities and then participate in the acquisition or disposition of those securities and receive a commission for their services" could be found to be ERISA fiduciaries, but only where there existed "some sort of an agreement or understanding ... that [the broker/dealer] would provide to the Plan individualized investment advice which would be the primary basis for the Plan's investment decisions." *Id.* at 293.

The court rejected Farm King's "rendering investment advice" argument, determining that the district court did not clearly err in finding that "there was no mutual understanding that Jones' advice would be the primary basis for Plan investments." *Id.* The court noted that:

> [t]here is nothing in the record to indicate that Jones or its employees had agreed to render individualized investment advice to the Plan, nor that the trustees so agreed. The only 'agreement' between the parties was that the trustees would listen to Jones' sales pitch and if the trustees liked the pitch, the Plan would purchase from among the suggested investments, the very cornerstone of a typical broker-client relationship.

*Id.*

The same is true in the case at hand. For all the majority makes of the frequency of the parties' meetings and the volume of investments, there is absolutely no indication that Buster or Northern Financial agreed to serve as the primary source of investment advice to the Trustees. Additionally, there is nothing in the record which suggests that the Trustees intended such a mutual agreement or relied on Buster and Northern Financial as their primary basis for investment decisions. *See* 29 C.F.R. § 2510.3–21(c)(1)(B).

Thus, to the extent the district court found that the parties entered into a mutual agreement under 29 U.S.C. § 1002(21)(A)(ii), it clearly erred. To the extent that it concluded that Buster and Northern Financial had a mutual agreement based on the fact that Buster and Northern Financial were persuasive sellers of investments to the Trust, the court also erred as a matter of law.

Furthermore, the factual situation in the case at hand is even more compelling than that of *Farm King.* The Seventh Circuit held that the district court correctly found that Jones was not an ERISA fiduciary where (1) Farm King invested approximately 99% of its assets in investments recommended and purchased through Jones; (2) Jones advised the trustees as to which investments "to hold and which to sell and offer[ed] the trustees a choice of recommended investments"; (3) the trustees never granted to Jones, and Jones never exercised, any control or influence over how the Plan's assets were managed or disposed; and (4) the trustees never supplied Jones with its investment portfolio. 884 F.2d 288 (7th Cir. 1989).

In the instant case, only 40% of the Trust's assets were invested through Buster and Northern Financial. Thus, while 99% of Farm King's investment portfolio was related in some way to its broker, a much smaller percentage of the Trust's economic welfare depended on Buster and Northern Financial's representations. Moreover, as in *Farm King,* the Trust never supplied Buster or Northern Financial with its investment portfolio. Without it, "individualized investment advise to the plan based on the particular needs of the plan" could not have been provided. 29 C.F.R. 2510.3–21(c)(1)(ii)(B).

Finally, Buster was compensated for his "services" through commissions. The Trust knew of this arrangement and was aware of

the conflict in promoting Buster's interests and that of the Trust. In supporting its conclusion that Buster rendered investment advice for a fee, under 29 U.S.C. § 1002(21)(A)(ii), the majority relies on the district court's findings that

> Buster ... provided information to the Trustees as to the value of various deed of trust notes by virtue of the yield calculations, mortgage analyses, and price information. He also provided descriptions of the property, and information pertaining to the payor's payment history and the payor's employment.

Maj. Op. at 1120.

These findings are not at all dispositive. Buster took steps that every effective mortgage broker would take in making a "sales pitch" to a client. Buster had a clear interest in providing this information in order to enhance the attractiveness of the investments to the Trust and to sell the investments.

As in *Farm King*, the Trustees relied on a number of Buster's recommendations because of the strong performance of past recommendations. However, neither Buster nor the Trustees interpreted this situation as an agreement for Buster to provide individualized advice upon which the trustees would rely as a primary basis for the plans' investment decisions. The relationship between the parties was simply one of broker-client.

It is especially true in this case because neither Northern Financial nor Buster rendered individual investment advice or made recommendations based on the particular needs of the Trust. In fact, neither Northern Financial nor Buster had any information concerning the assets of the Trust except for the deed of trust and notes which they sold to the Trust.

In concluding to the contrary, the majority applies an inordinately low standard in assessing the applicability of ERISA. *Accord Stanton v. Shearson Lehman/American Exp., Inc.*, 631 F.Supp. 100, 103–04 (N.D.Ga. 1986).

In *Stanton*, the defendants were found to be ERISA fiduciaries because they went "far beyond this limited involvement," in making "specific, unsolicited recommendations where the client is dependent upon and relies on the broker's special expertise ... [and where] the client merely 'rubber stamps'—follows automatically or without consideration—the investment recommendations of the broker." *Id.* The broker in *Stanton* played a qualitatively different and much more influential role in her client's investment decisions than Buster did in the Trust's investment portfolio. Notably, the certified public accountants administering the Trust in this case had previously entered into a partnership which sold the same kind of real estate securities which they now bought.

Finally, to the extent the majority categorizes Buster's actions in promoting his investment packages as rendering individualized investment advice, and his commissions from the sale of these investments as compensation for rendering investment advice, it unnecessarily creates an inter-circuit conflict with the Seventh Circuit and the other circuits which have followed *Farm King* and its rationale. *See Schloegel v. Boswell*, 994 F.2d 266 (5th Cir.), *cert. denied*, — U.S. —, 114 S.Ct. 440, 126 L.Ed.2d 374 (1993); *Olson v. E.F. Hutton & Co., Inc.*, 957 F.2d 622, 626 (8th Cir.1992); *Consolidated Beef Indus., Inc. v. New York Life Ins. Co.*, 949 F.2d 960 (8th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 1670, 118 L.Ed.2d 390 (1992); *Brown v. Roth*, 729 F.Supp. 391, 397 (D.N.J. 1990).

### Conclusion

In summary, the district court and the majority erred in deciding to federalize state common law claims. I would reverse and remand the case to the district court to decide it on state and common law fraud claims.