**Debra KEACH and Patricia Sage, Plaintiff,**

v.

**U.S. TRUST COMPANY, N.A., et al., Defendants.**

**No. 01–1168.**

United States District Court, C.D. Illinois.

Dec. 12, 2002.

Dean B. Rhoads, Robert Rhode, Edward Sutkowski, Steven Oates, Sean Anderson, Gregory J. Pals, Sutkowski & Rhoads, Peoria, IL, for Plaintiffs, Debra Keach and Patricia Sage.

Timothy Bertschy, Robert Eccles, Shannon M. Barrett, Heyl, Royster, Voelker & Allen, Peoria, IL, O'Melveny & Myers LLP, Washington, DC, for Defendant U.S. Trust Company, NA, fka U.S. Trust Company of California.

Charles Roth, James Springer, Joseph Z. Sudow, Michael T. G, Nancy Ross, Trent P. Cornell, Kavanagh Scully Sudow White & Frederick, Peoria, IL, McDermott Will & Emery, Duane Morris LLC, Chicago, IL, for Defendant, Ellen D. Foster, Executrix of the Estate of Thomas S. Foster and as Co–Trustee of the Thomas S. Foster Trust executed on 4/14/94.

Michael T. Graham, Nancy Ross, McDermott Will & Emery, Chicago, IL, for Defendant, The Northern Trust Company, an Illinois Corporation as CoTrustee of the Thomas S. Foster Trust executed on 4/14/94.

Richard J. Pautler, Jennifer Baetje, Thompson & Coburn St. Louis, MO, for Defendants, Robert A. Ostertag, Jr., Terry P. Cole, Alan R. Dix, Jon Elletson, A. Robert Pellegrino.

James Bailey, Paul Ondrasik, Jr., Roy Davis, David Lubben, Steptoe & Johnson, Washington, DC, Davis & Campbell LLC, Peoria, IL, for Defendants, Valuemetrics, Inc.

Mark Casciari, Ian Hugh Morrison, Sari M. Alamuddin, Seyfarth Shaw, Chicago, IL, for Defendant, Houlihan, Lokey, Howard & Zukin, Inc.

Charles Roth, James Springer, Kavanagh Scully Sudow White & Frederick, Peoria, IL, for Defendant, Stephen P. Bartley.

Stephen Gay, Jeffrey Alan Ryva, Husch & Eppenberger LLC, Peoria, IL, for Defendant, Lyle Dickes.

Jeffrey Rock, Hasselberg Rock Bell & Kuppler, Peoria, IL, for Defendant, James Freid.

Charles Roth, James Springer, Kavanagh Scully Sudow White & Frederick, Peoria, IL, for Defendant, Dale Fujimoto.

John Elias, Robert Riffle, Cynthia Elias, Elias Meginnes Riffle & Seghetti, Peoria, IL, for Defendant, William Gehring, Henry Gregory, II, John F. Halpin, James Kyle, John Lappegaard, George Mckittrick, Clayton Patino, Jerry Rathmann, W.

Thomas Stumb, Mark Swedlund, Leo Vanderlugt, Robert Wilson, Bruce Wright.

Jeffrey Rock, Hasselberg Rock Bell & Kuppler, Peoria, IL, for Defendant Richard Hodgson.

Dean Essig, Washington, IL, for Defendant Gregory McAllister.

Charles Roth, James Springer, Joseph Sudow, Kavanagh Scully Sudow White & Frederick, Peoria, IL, for Defendants, Michael Norbutas, Frederick Stuber, and for Defendant Ashley Anne Foster, as trustee or agent of the Ashley Anne Foster Irrevocable Trust, and Melvyn R. Regal, individually, as trustee or agent of the Steven Jay Regal Trust, as trustee or agent of the Judi Lynn Regal Trust, and as trustee or agent of the John E. Regal Trust.

## *ORDER*

MIHM, District Judge.

Now before the Court is Defendant Houlihan, Lokey, Howard, & Zukin, Inc.'s ("Houlihan") Motion for Summary Judgment. For the reasons set forth below, the Motion for Summary Judgment [# 351] is GRANTED.

### FACTUAL BACKGROUND

The basic factual background has been sufficiently set forth in the prior orders of this Court, and familiarity therewith is presumed. The present motion is brought by Houlihan, which was the valuation firm retained by U.S. Trust to render a fairness opinion in connection with the 1995 ESOP transaction. The matter is now fully briefed and ready for resolution. This Order follows.

### DISCUSSION

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party may meet its burden of showing an absence of disputed material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. 2548. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Cain v. Lane*, 857 F.2d 1139, 1142 (7th Cir.1988).

If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. Nevertheless, this Court must "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." *Holland v. Jefferson Nat. Life Ins. Co.*, 883 F.2d 1307, 1312 (7th Cir.1989). Summary judgment will be denied where a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 931 (7th Cir.1995).

Houlihan has moved for summary judgment based on the argument that it was not a fiduciary to the ESOP plan. A fiduciary is one who owes duties to the plan participants and beneficiaries; a fiduciary

must exercise care, skill, prudence, and diligence in fulfilling those duties. 29 U.S.C. § 1104(a).

Under ERISA, an individual or entity can become a fiduciary in three ways: (1) being named as a fiduciary in the written plan instrument, 29 U.S.C. § 1102(a); (2) being named and identified as a fiduciary pursuant to a procedure specified in the written plan instrument, 29 U.S.C. § 1102(a)(2); or (3) meeting the definition of a fiduciary contained in 29 U.S.C. § 1002(21):

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

Here, Plaintiffs argue that Houlihan was a fiduciary to the ESOP plan under § 1002(21)(A) because it exercised control over plan assets and rendered investment advice with respect to the property of the plan. Each argument will be addressed in turn.

 Initially, the Court rejects the contention that Houlihan exercised discretionary control or authority with respect to the plan assets within the meaning of § 1002(21)(A)(i). In this circuit, "a fiduciary is a person who exercises any power of control, management or disposition with respect to monies or other property of an employee benefit fund, or has the authority or responsibility to do so." *Farm King Supply v. Edward D. Jones & Co.*, 884

F.2d 288, 292 (7th Cir.1989), *citing Forys v. United Food & Commercial Worker's International Union*, 829 F.2d 603, 607 (7th Cir.1987). Under this definition, a showing of authority or control requires "actual decision-making power" rather than the type of influence that a professional advisor may have with respect to decisions to be made by the trustees or fiduciaries that it advises. *Id.; Pappas v. Buck Consultants, Inc.*, 923 F.2d 531, 535 (7th Cir.1991). Professionals who do no more than provide advice to plan trustees are not fiduciaries. *Pappas*, 923 F.2d at 535; *Laborers' Pension Fund v. Arnold*, 2001 WL 197634, at *3–5 (N.D.Ill. Feb.27, 2001).

Here, Houlihan was the financial advisor to U.S. Trust, which for purposes of this motion was the ESOP trustee for purposes of the December 1995 stock purchase transaction. Houlihan was not hired by the ESOP plan to manage the plan assets or make investment decisions. It was U.S. Trust, not Houlihan, that made the final decision and caused the ESOP to purchase the shares of stock. There is no evidence in the record indicating that U.S. Trust was simply a puppet acting out Houlihan's directives in doing so. Despite Plaintiffs' efforts to take sentences out of context to suggest a deeper involvement by Houlihan, the inferences they ask the Court to draw (and which would be necessary to defeat the entry of summary judgment in favor of Houlihan) are both unsupported by facts and objectively unreasonable.

 For example, Plaintiffs argue that U.S. Trust heavily relied on and effectively delegated its decision making authority to Houlihan. However, it is well-established that simple reliance on a professional's advice is not enough to transform the advisor into a fiduciary. Even where it was alleged that the professional advisor invited reliance on his advice and knew that his

erroneous work would not be questioned by the plan trustees, the Seventh Circuit has concluded that this did not amount to discretionary control and therefore, no fiduciary relationship was present. *Pappas*, 923 F.2d at 535. There is no reason why Plaintiffs' substantively similar theory that U.S. Trust blindly relied on Houlihan's advice should not warrant the same result, even assuming arguendo that the evidence supported this theory.

Plaintiffs point to an isolated sentence in the agreement letter between U.S. Trust and Houlihan which stated that "US Trust will rely on the written opinion of the Plan's independent financial advisor" and that if the financial advisor does not provide the requested financial opinions "US Trust will not be required to make a final determination whether to participate in the Proposed Transaction." However, this language is standard in many kinds of professional agreements. It did *not* state that U.S. Trust would make no effort to independently verify data, would not draw its own conclusions based on Houlihan's advice, or would essentially just rubber stamp Houlihan's efforts. Furthermore, this argument ignores evidence of record that Houlihan was not the only professional advisor involved in this case, as well as evidence indicating that U.S. Trust did engage in some effort to analyze the various professional opinions and information received from F & G prior to making its decision. In fact, Plaintiffs have admitted that U.S. Trust managed the ESOP's assets, did its own analysis of the ESOP transaction, reviewed Houlihan's preliminary assessments, and directed Houlihan to perform additional analysis based on its review.

Plaintiffs contend that Houlihan "met with Regal and agreed up front not to push the Eyler issue." However, once again, this is solely Plaintiffs' speculative characterization and is not reasonably supported by the deposition testimony cited. In his deposition, Martin Sarafa, Houlihan's senior-vice president in the Los Angeles office, stated that Regal had asked if he was familiar with the Eyler case during a meeting in June 1995 and if it was something that they needed to be concerned about, to which Sarafa responded that the Eyler case involved unique facts and circumstances and was not generally something to worry about. He did not state that Houlihan would not raise or would "waive" the Eyler issue. In fact, the undisputed evidence establishes that Houlihan expressly considered this question when it advised U.S. Trust that the F & G shares would immediately decrease in value to $16.53 after the ESOP transaction due to the $70 million loan obtained by F & G to finance the purchase, a fact which is acknowledged by Plaintiffs on page 7 of their response.

Plaintiffs next point to a statement contained in a November 29, 1995, memo from Goldberg of U.S. Trust to F & G indicating that U.S. Trust was willing to recommend the stock purchase at $19.50 per share and that he had confirmed that Houlihan was "prepared to issue a satisfactory opinion, again based on current market conditions, recommending such a purchase." To infer from this statement that Houlihan affirmatively recommended and effectively controlled the purchase is unreasonable, particularly in light of the language in the fairness opinion (and lack of evidence to the contrary) that Houlihan was not engaged "to give advice as to whether the ESOP should engage in the Transaction," was not "requested to seek or identify alternatives or to advise the Trustee with respect to its duties generally," and that Houlihan understood that U.S. Trust would consult with and rely on its own legal counsel with respect to certain terms of the opinion. Nowhere in the fairness opinion does Houlihan state that U.S.

Trust should approve the transaction or that Houlihan was recommending the proposed transaction; the opinion simply stated that in Houlihan's opinion:

> [T]he consideration to be paid by the ESOP for the Company's securities in the Transaction; (sic) is not greater than adequate consideration for such securities; (sic) the Transaction is fair and reasonable to the ESOP from a financial point of view, the loan between the ESOP and the Company, taken as a whole, is fair and reasonable to the ESOP from a financial point of view;(sic) and the interest rate, with respect to such loan, is fair and reasonable to the ESOP from a financial point of view.

In short, Houlihan's fairness opinion cannot fairly be characterized as a recommendation or endorsement of the transaction, nor can it be said that the opinion encourages U.S. Trust to either participate or not participate in the transaction.

 Plaintiffs make far too much of U.S. Trust's statement. It is not only proper for a trustee to seek its own valuation of stocks it is considering for purchase. It may also be legally necessary in order for a trustee to fulfill its obligations as a plan fiduciary. Under Plaintiffs' theory, any trustee who acted prudently in seeking a second opinion as to the value of such stocks would find itself a co-fiduciary with the professional advisor whose advice it sought. This result would be contrary to public policy and would discourage professional advisors from transacting business with ERISA plans for fear of exposing themselves to fiduciary liability. Accordingly, the fact that U.S. Trust would not go through with the ESOP transaction unless an independent financial advisor found the transaction to be fair to the ESOP has no legally significant meaning in this context.

Plaintiffs then ask the Court to infer substantial influence from the fact that following the June 1995 meeting with Regal, Houlihan sent him a letter stating that Houlihan was "enthusiastic about the prospect of utilizing a leveraged employee stock ownership plan ('ESOP') to help certain Foster & Gallagher ('F & G') shareholders achieve liquidity for their ownership of the company." Once again, this statement has been taken out of context, as the record establishes that Houlihan was not hired to give advice to F & G, and the statement has no significance with respect to Houlihan's engagement to provide a fairness opinion to U.S. Trust. The letter was drafted at a time when F & G was effectively auditioning firms for a transaction team to examine the possibility of the stock purchase transaction with the ESOP. Furthermore, a review of the remainder of the letter suggests that Houlihan was being considered for the valuation job that was ultimately awarded to Valuemetrics. Contrary to Plaintiffs' suggestion, Houlihan did not write this letter after having been selected as U.S. Trust's financial advisor, and it cannot reasonably be read to evidence some clandestine desire to work for the F & G selling shareholders through U.S. Trust that amounted to actual control of the transaction.

 Plaintiffs further cite Houlihan's reliance without independent verification on financial projections provided by interested shareholders of F & G and its failure to consider the nature and extent of consumer fraud issues facing the company. Even assuming the truth of these assertions, this is not the type of conduct that transcends the usual scope of the professional-client relationship and crosses the line into fiduciary liability. While such conduct might form a basis for some sort of malpractice action with U.S. Trust as the plaintiff, that is not the nature of the action before the Court, and Plaintiffs con-

tentions are therefore unavailing. *See Arnold*, 2001 WL 197634, at *3–4.

The remaining allegations of purported "control" noted by Plaintiffs merit no further discussion, as they amount to nothing more than speculative conjecture/ characterizations of the facts. However, at this stage of the litigation, conjecture and rhetoric are insufficient to create a genuine issue of material fact. *See Arnold*, 2001 WL 197634, at * 7 (noting that a court need not accept "unwarranted deductions" or "sweeping legal conclusions" cast in the form of factual allegations.) As such, they have failed to demonstrate through competent *evidence* that Houlihan asserted actual control over the plan assets exchanged by virtue of the 1995 transaction, and Plaintiffs cannot survive Houlihan's Motion for Summary Judgment in this respect.

■■■■ Plaintiffs alternatively argue that Houlihan was a fiduciary under § 1002(21)(A)(ii) because it provided investment advice to the ESOP. The record does not support a finding that Houlihan gave investment advice to the ESOP regarding the 1995 stock purchase. In fact, all of the material evidence points the other way. Besides, "[n]ot everyone who provides investment advice to an ERISA plan is" a fiduciary. *Wolin v. Smith Barney Inc.*, 83 F.3d 847, 849 (7th Cir.1996).

> The statute, 29 U.S.C. § 1002(21)(A)(ii), as glossed by the Department of Labor's regulations, 29 C.F.R. § 2510.3–21, and by the cases, such as *Farm King Supply* and *Thomas, Head & Greisen Employees Trust v. Buster*, 24 F.3d 1114, 1117–20 (9th Cir.1994), requires that the investment advisor, in order to be deemed a fiduciary, with all that that status implies, be rendering advice pursuant to an agreement, be paid for the advice, and

have influence approaching control over the plan's investment decisions.

*Id.*

Department of Labor regulations further provide that a professional advisor can qualify as a fiduciary when it "renders any advice ... on a regular basis to the plan pursuant to mutual agreement ... that such services will serve as a primary basis for investment decisions...." 29 C.F.R. § 2510.21(c)(1)(ii)(B). Plaintiffs sole attempt to establish the provision of investment advice on a regular basis consists of one short paragraph that reveals the lack of merit in the assertion. Plaintiffs do little more than cite Plaintiffs Exhibits 79 and 209, the fairness opinion and a posttransaction valuation of the F & G shares as of December 31, 1995, respectively. This does not establish the provision of advice on a *regular* basis. Any suggestion that Houlihan was engaged to provide financial advice to the ESOP on a regular basis prior to the 1995 stock purchase is simply not supported by Plaintiffs' citations to the record or any other evidence of which this Court is presently aware.

The Court has previously found as a matter of law in this Order that there is no *evidence* of record from which a reasonable fact finder could conclude that Houlihan exercised influence approaching actual control over the ESOP's investment decisions. Accordingly, Plaintiffs' argument under § 1002(21)(A)(ii) also fails.

## CONCLUSION

For the reasons set forth above, Defendant Houlihan's Motion for Summary Judgment [# 351] is GRANTED. Houlihan is now TERMINATED as a party to this action.

ENTERED this 12th day of December, 2002.