957 F.2d 622
 60 USLW 2604, Fed. Sec. L. Rep. P 96,554,
14 Employee Benefits Cas. 2763
 Darwin A. OLSON; Michael J. Fogarty; Lyle R. Pappenfuss;
C.O. Brown Agency, Inc., Administrator; C.O.
Brown Agency, Inc., Profit Sharing
Trust; C.O. Brown Agency,
Inc., Pension Trust,
Appellants,
v.
E.F. HUTTON & COMPANY, INC.; Shearson Lehman Hutton, Inc.;
Kenneth H. Bayliss, Jr.; Appellees.
 No. 91-1416.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 17, 1991.
Decided Feb. 27, 1992.
 
 Gary Hansen, St. Paul, Minn., argued (Peter E. Hintz, on the brief), for appellants.
 Perry M. Wilson, III, Minneapolis, Minn., argued (J. Jackson, on the brief), for appellees.
 Before LAY,* Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.
 FLOYD R. GIBSON, Senior Circuit Judge.
 
 
 1
 The district court granted summary judgment in favor of E.F. Hutton, Shearson Lehman Hutton, and Kenneth Bayliss (hereinafter referred to collectively as "the appellees"), ruling that the defendants were not fiduciaries with respect to two ERISA plans and that the certificates of deposit sold by the defendants were not securities. We vacate the judgment of the court and remand for further proceedings.
 
 I. BACKGROUND
 
 2
 C.O. Brown, Inc. is an insurance agency which administrates two employee benefit plans for its employees.[1] In 1983, plaintiffs Olson, Fogarty, and Pappenfuss became the trustees of both plans. The trustees, believing they lacked the requisite expertise, experience, and knowledge to make sound investment decisions, met with Bayliss, an account broker with E.F. Hutton.[2] The trustees informed Bayliss they hoped to maintain 80% of the funds invested in bonds or "bond instruments" and 20% invested in stock, and to receive a return of approximately 8 1/2%. Bayliss indicated these goals were reasonable and, upon Bayliss' suggestion, the trustees agreed to invest in certificates of deposit ("CDs") instead of bonds. As a result of these meetings, Bayliss became the account representative for the profit sharing trust; in 1985, he became the representative for the pension trust. Bayliss was not given discretionary authority over the accounts and was supposed to obtain approval from a trustee prior to buying or selling on the trusts' behalf.
 
 
 3
 The trustees received monthly and annual statements from E.F. Hutton, but they could not understand them. Bayliss told the trustees he would prepare quarterly reports they could understand, but the reports he prepared did not disclose the commissions charged on the accounts.
 
 
 4
 In 1988, the trustees, the trusts, and C.O. Brown, Inc. (hereinafter referred to collectively as "the trustees") filed suit against the appellees to recover losses caused by excessive buying and selling of CDs. The complaint alleged three theories of liability: breach of fiduciary duty under ERISA, violations of the Securities Exchange Act, and violations of the Minnesota Securities Act. The district court granted the appellees summary judgment on the ERISA claim after determining that Bayliss was not a fiduciary. The court also granted summary judgment on the two securities law claims because "C.D.s issued by federally insured banks are not securities under the federal or Minnesota securities laws." Olson v. E.F. Hutton & Co., No. Civ. 4-88-634, slip op. at 4 (D.Minn.1990).
 
 
 5
 After the district court entered summary judgment, the trustees sought leave to amend their complaint to include various state law claims. The district court denied the trustees leave to amend because the motion was untimely and because the court believed the new claims were preempted by ERISA. After the district court entered final judgment, the trustees appealed.
 
 II. DISCUSSION
 A. Fiduciaries under ERISA
 
 6
 A person is a fiduciary with respect to an ERISA plan
 
 
 7
 to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.
 
 
 8
 29 U.S.C. § 1002(21)(A) (1988). The trustees concede subsection three is inapplicable to this case because Bayliss was not granted discretionary authority. However, they claim that Bayliss qualifies as a fiduciary under both subsection one and subsection two. Mindful that "[t]he term fiduciary is to be broadly construed," Consolidated Beef Indus. v. New York Life Insurance Co., 949 F.2d 960, 963 (8th Cir. 1991), we examine the law pertaining to these two subsections before discussing the propriety of the district court's entry of summary judgment.
 
 1. Subsection One
 
 9
 There is a clear difference between the language contained in subsections one and three. Subsection one imposes fiduciary status on those who exercise discretionary authority, regardless of whether such authority was ever granted. Subsection three describes those individuals who have actually been granted discretionary authority, regardless of whether such authority is ever exercised. This interpretation, though sufficiently supported by the statute's language, is further supported by Congress' intent. See H.R.Rep. No. 93-533, 93rd Cong., 2d Sess. 11, reprinted in 1974 U.S.C.C.A.N. 4639, 4649 ("a fiduciary is a person who exercises any power of control ... or who has authority or responsibility to do so.") (emphasis added); H.R.Rep. No. 1280, 93rd Cong. 2d Sess., reprinted in 1974 U.S.C.C.A.N. 5038, 5103. Finally, we note this interpretation is consistent with Congress' desire that ERISA protect "the interests of participants in employee benefit plans and their beneficiaries," 29 U.S.C. § 1001(b) (1988), because it imposes fiduciary status upon those who act like fiduciaries as well as those who actually are fiduciaries. Cf. Blatt v. Marshall & Lassman, 812 F.2d 810, 812-13 (2d Cir.1987) ("[W]hether or not an individual or entity in an ERISA fiduciary must be determined by focusing on the function performed, rather than the title held."); Lieb v. Merril Lynch, Pierce, Fenner & Smith, 461 F.Supp. 951, 954 (E.D.Mich.1978) (When "the broker has usurped actual control over a technically non-discretionary account, ... the broker owes his customer the same fiduciary duties as he would have had the account been discretionary from the moment of its creation."). Thus, the absence of any grant of authority to Bayliss does not automatically preclude a finding that he is a fiduciary; Bayliss can be found to be a fiduciary if, as described by subsection one of the definition, he exercised discretionary control over the pension plans.[3]
 
 2. Subsection Two
 
 10
 Department of Labor regulations define the term "investment advice" as used in subsection two of the definition thusly:
 
 
 11
 A person shall be deemed to be rendering "investment advice" to an employee benefit plan, ... only if:(i) Such person renders advice to the plan as to the value of securities or other property, or makes recommendation as to the advisability of investing in, purchasing, or selling securities or other property; and
 
 
 12
 (ii) Such person either directly or indirectly ...--
 
 
 13
 (A) Has discretionary authority or control, whether or not pursuant to agreement, arrangement or understanding, with respect to purchasing or selling securities or other property for the plan; or
 
 
 14
 (B) Renders any advice ... on a regular basis to the plan pursuant to a mutual agreement, arrangement or understanding, written or otherwise, between such person and the plan or a fiduciary with respect to the plan, that such services will serve as a primary basis for investment decisions with respect to plan assets, and that such person will render individualized investment advice to the plan based on the particular needs of the plan....
 
 
 15
 29 C.F.R. 2510.3-21(c).
 
 
 16
 At issue in this case is the meaning of parts (ii)(A) and (ii)(B). Part (ii)(A) describes a person who has discretion with respect to an ERISA plan, even if such discretion did not arise from an "agreement, arrangement or understanding." Thus, part (ii)(A) essentially describes all people described by part one of § 1002(21)(A) (people exercising discretionary authority) and part three of § 1002(21)(A) (people who have been granted discretionary authority).[4]
 
 
 17
 Part (ii)(B) is to be applied by first determining "whether under the regulation there existed a mutual agreement or understanding between the parties that [the broker's] advice would be the primary basis for the Plan's investment decisions." Farm King Supply, Inc. v. Edward D. Jones & Co., 884 F.2d 288, 293 (7th Cir.1989). We agree with the Seventh Circuit that this issue "is comparable to the corresponding 'meeting of the minds' component of contract cases. Whether a meeting of minds exists is an issue for the trier of fact." Id. at 293 n. 6.[5]
 
 
 18
 These regulations were adopted to insure brokers are not given fiduciary status without their knowledge. See id. at 292-93 (citing 40 Fed.Reg. at 50843); Pension Fund--Local 701 v. Omni Funding Group, 731 F.Supp. 161, 165 (D.N.J.1990). Our interpretation of these regulations is consistent with this goal. A person who usurps authority over a plan's assets and makes decisions about the use or disposition of those assets should know they are acting as a fiduciary. Similarly, a broker necessarily has reason to know that his advice is being used as a primary basis for investment decisions with respect to plan assets if the facts demonstrate a meeting of the minds as contemplated by part (ii)(B) exists, thus it is proper to impose fiduciary status upon such a broker.
 
 3. The Propriety of Summary Judgment
 
 19
 In reviewing the district court's entry of summary judgment, we apply the same standard as applied by the district court. Kegel v. Runnels, 793 F.2d 924, 926 (8th Cir.1986). In so doing, we "must view the facts in the light most favorable to the opposing party and must give that party the benefit of all reasonable inferences to be drawn from the facts." Id. Our independent review of the record convinces us that summary judgment was inappropriate in this case.
 
 
 20
 As to the trustees' claim that Bayliss exercised discretionary control within the meaning of § 1002(21)(A)(i), the record is more than sufficient to withstand the appellees' motion for summary judgment. Among the trustees, Fogarty was Bayliss' principal contact. Fogarty could not recall Bayliss ever seeking permission to trade CDs and did not know that the CDs were being sold prior to maturity. Fogarty's testimony about the CDs was further supported by the trustees' intent that the CDs, as bond substitutes, represent stable and secure investments, by Bayliss' discussion of CD yields in terms of yield at maturity, and by the trustees' reliance on Bayliss to describe the accounts' status due to their inability to understand the monthly reports.
 
 
 21
 Bayliss' deposition reveals that he tried to get permission prior to, or shortly after, purchasing or selling the plans' investments.[6] Fogarty confirmed this claim insofar as the sale of stocks was concerned, and conceded that this pattern of practice may have given Bayliss "inferred control" over the stocks. However, this concession does not contradict Fogarty's testimony regarding the CDs, and Bayliss' deposition answers do not specifically address the CDs. In sum, the record in the light most favorable to the trustees supports the view that though Bayliss obtained permission to trade stocks, he did not obtain permission to trade CDs.[7]
 
 
 22
 As to the trustees' assertion that Bayliss rendered investment advice within the meaning of § 1002(21)(A)(i) and the corresponding regulation, the district court correctly determined that Bayliss "rendered advice as described in subsection (c)(1)(i) of the regulation." Olson, slip op. 9. Based on our discussion in the above paragraph, we conclude the record supports the trustees' assertion that Bayliss had discretionary control within the meaning of subsection (c)(1)(ii)(A) of the regulation. We also conclude a favorable reading of the record supports the trustees' position that the parties had an understanding that Bayliss' advice was to be a primary basis for investment decisions. The trustees initially contacted Bayliss because they wanted advice from someone more familiar with "the market." The trustees told Bayliss they wanted 80% of the plans' assets invested in bonds or bond-type instruments, but did not specifically mention CDs; it was Bayliss who first suggested that CDs would satisfy the trustees interests in a safe, steady investment. Once the accounts were open, Bayliss initiated calls to the trustees and informed them there were certain stocks he thought they should purchase or sell on behalf of the plans.
 
 
 23
 The district court rejected the trustees' arguments because there was no proof of an actual agreement. The court also rejected the trustees claimed reliance on Bayliss' expertise in the market because "[t]he trustees were sophisticated individuals with extensive business responsibilities." Olson, slip op. at 9. However, this "weighing of the evidence" is inappropriate when ruling on a motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). We believe the record demonstrates that Bayliss and the trustees had an understanding that Bayliss' investment advice would serve as the primary basis for investment decisions as described by subsection (c)(ii)(B) to a degree sufficient to prevent entry of summary judgment against the trustees.[8]
 
 B. Application of the Securities Laws
 
 24
 The appellees rely on Marine Bank v. Weaver, 455 U.S. 551, 102 S.Ct. 1220, 71 L.Ed.2d 409 (1982) in contending that CD's are not securities within the meaning of the securities laws.[9] In Marine Bank, the Court conceded that "the certificate of deposit is not expressly excluded from the definition [of a security] since it is not currency and it has a maturity exceeding nine months." Id. at 557, 102 S.Ct. at 1224 (footnote omitted). However, the Court found that special circumstances warranted excluding the CD's at issue from the securities laws' protections. Specifically, extensive regulation of the banking industry virtually guaranteed repayment of any lost investment; hence, the investors were already protected and there was no need to offer additional protection by allowing a cause of action under the securities laws. Id. at 558-59, 102 S.Ct. at 1224-25.
 
 
 25
 Though Marine Bank is certainly germane to this case, it does not, as the appellees contend, conclusively hold that all CDs are beyond the purview of the securities laws. The Court expressly limited its holding when it said:
 
 
 26
 It does not follow that a certificate of deposit ... invariably falls outside the definition of a "security" as defined by the federal statutes. Each transaction must be analyzed and evaluated on the basis of the content of the instruments in question, the purposes intended to be served, and the factual setting as a whole.
 
 
 27
 Id. at 560 n. 11, 102 S.Ct. at 1225 n. 11. This opportunity for a given CD to qualify as a security has been recognized and endorsed by Congress. See H.R.Rep. No. 97-626, Part I, 97th Cong., 2d Sess. 10 (1982), reprinted in 1982 U.S.C.C.A.N. 2780, 2788.
 
 
 28
 In determining whether Marine Bank removes a given investment from the protection of the securities laws, courts have focused on whether existing regulations guarantee a return of the investment. E.g., Christison v. Groen, 740 F.2d 593, 596 & n. 2 (7th Cir.1984). Where such guarantees exist, the securities laws provide no added protection. E.g., Wolf v. Banco Nacional de Mexico, S.A., 739 F.2d 1458, 1462 (9th Cir.1984) (holding that Mexican banks were sufficiently regulated to prevent any risk of the investment's devaluation), cert. denied, 469 U.S. 1108, 105 S.Ct. 784, 83 L.Ed.2d 778 (1985). However, when the investment is not guaranteed, Marine Bank does not bar application of the securities laws to what would otherwise qualify as a security. E.g., Reves v. Ernst & Young, 494 U.S. 56, 110 S.Ct. 945, 953, 108 L.Ed.2d 47 (1990) ("we find no risk-reducing factor to suggest that these instruments are not in fact securities."); Gary Plastic Packaging Corp. v. Merril Lynch, Pierce, Fenner & Smith, Inc., 756 F.2d 230, 239-40 (2d Cir.1985).
 
 
 29
 The trustees claim that Bayliss "churned" the CD accounts. "Churning occurs when a securities broker buys and sells securities for a customer's account, without regard to the customer's investment interests, for the purpose of generating commissions." Thompson v. Smith Barney, Harris Upham & Co., 709 F.2d 1413, 1416 (11th Cir.1983). The trustees further claim they were not adequately informed of the amount of commissions incurred due to this excessive trading. The appellees counter by alleging that the sale of CDs prior to maturity can be a valid investment strategy. Thus, though the parties disagree as to whether the CDs were sold with a good or evil intent, the parties do agree the CDs were sold prior to maturity. Regardless of whether the trading in CDs was approved by the trustees, and regardless of whether the trading of CDs prior to maturity constituted sound investment strategy or impermissible churning, we believe the securities laws extend their protection to the facts of this case. By selling and purchasing CDs in order to obtain gains due to the changing interest rates, the trustees relied (willingly or not) upon Bayliss' expertise. The banking laws do not protect against lost value in such circumstances, thus the trustees are left unprotected. Consequently, in those unusual circumstances in which CDs are sold prior to maturity in order to generate revenue from changes in the interest rate instead of being held to maturity (as is the customary investment practice with regard to CDs), the securities laws may be invoked in order to protect investors from the harms of impermissible churning. Cf. Gary Plastic, 756 F.2d at 241 ("absent the securities laws, plaintiff has no federal protection against fraud and misrepresentation by the defendants in the marketplace."). Similarly, because the banking laws may not address the need for disclosure of a broker's commission or offer redress for the trustees' claim that the CDs were traded without permission; other gaps in protection may exist. Therefore, the court should examine the extent of the banking laws' protections and, where such gaps in protection exist, allow the trustees to allege a securities law claim.
 
 
 30
 The district court also granted judgment in favor of the appellees on the trustees' state securities law claims. In so doing, the court relied on Caucus Distributors v. Commissioner of Commerce, 422 N.W.2d 264, 272 (Minn.Ct.App.1988), cert. denied, 488 U.S. 1006, 109 S.Ct. 786, 102 L.Ed.2d 778 (1989), which in turn cited Marine Bank. For the same reasons we vacate and remand with regard to the trustees' claims under the federal securities laws, we also vacate and remand with regard to the state securities laws claims.
 
 C. Other Issues
 
 31
 Because this case is to be remanded, the district court will undoubtedly enter a new scheduling order. Therefore, we decline to discuss the preemption issue and we do not need to consider whether the district court abused its discretion in denying the trustees' motion to amend the complaint. Finally, we note that E.F. Hutton and Shearson Lehman Hutton were granted summary judgment because their employee, Bayliss, was granted summary judgment. Consequently, we also vacate the judgment in favor of E.F. Hutton and Shearson Lehman Hutton.
 
 III. CONCLUSION
 
 32
 Though the standard of review in this case requires us to view the facts in the light most favorable to the trustees, our discussion today should not be viewed as a decision on the merits of the trustees' claims. However, given this favorable standard of review, the record is sufficient to create a reasonable factual dispute as to whether Bayliss was a fiduciary under ERISA. Similarly, Bayliss' actions may have caused damage not insured by the banking laws; therefore, the securities laws may need to be invoked in order to bridge a gap in federal protection. Finally, the separate issue of liability of Bayliss' employers was not independently addressed below. For these reasons, we vacate the judgment of the district court and remand for further proceedings.
 
 
 
 *
 The Honorable Donald P. Lay was Chief Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted and took senior status on January 7, 1992, before the opinion was filed
 
 
 [1]
 A pension trust was formed in 1953 and a profit sharing trust was formed in 1969
 
 
 [2]
 E.F. Hutton was later acquired by Shearson Lehman Hutton, Inc. ("Shearson"). Bayliss continued as a broker with Shearson after this acquisition
 
 
 [3]
 This does not mean that all actions with respect to a plan indicate discretionary power has been usurped. It is well established that one who performs only ministerial tasks is not cloaked with fiduciary status. Anoka Orthopaedic Assoc. v. Lechner, 910 F.2d 514, 517 (8th Cir.1990). We point out, however, that decisions relating to the use or disposition of plan assets are not merely ministerial decisions
 
 
 [4]
 We concede this interpretation appears redundant, given that all people qualifying under part (ii)(A) of the regulation will be fiduciaries under subsections one or three of the statute even if they did not render investment advice. However, any other interpretation will fail to give meaning to the regulation's directive that discretionary control need not arise from an explicit grant of power
 
 
 [5]
 Of course, as the regulation states, such a "meeting of the minds" need not be in writing, and we believe the requisite understanding may be proven by examining the parties' course of conduct
 
 
 [6]
 We do not understand the legal significance of Bayliss' acquisition of post-trade permission in light of the fact that he was to obtain the trustees' permission prior to trading and was not supposed to exercise any discretionary control or authority
 
 
 [7]
 The district court determined "the evidence largely supports the position taken by [the] defendants." Olson, slip op. at 7 n. 2. This finding is suspect given the court's legal conclusion that the lack of an explicit or implicit grant of discretionary control to Bayliss prevented him from being a fiduciary. Id. at 7. Furthermore, our independent review of the evidence does not reveal such overwhelming support for the defendants' position
 
 
 [8]
 In their brief and at oral argument, the appellees expressed concern over the fact that there were materials in the record on appeal that were not before the district court at the time summary judgement was entered. We make clear that our decision to reverse the district court is based solely upon our reading of the materials available to the court at the time summary judgment was entered
 
 
 [9]
 The definition of a security is essentially the same under both the Securitys Act of 1933 and the Security Exchange Act of 1934. Marine Bank, 455 U.S. at 555 n. 3, 102 S.Ct. at 1223 n. 3