Steven **DANIELS**, et al., Plaintiffs,

v.

**NATIONAL EMPLOYEE BENEFIT SERVICES, INC.,** et al., **Defendants.**

**No. 1:92CV2001.**

United States District Court, N.D. Ohio, Eastern Division.

June 30, 1994.

Jeffrey L. Nischwitz and Christopher S. Williams, Calfee, Halter & Griswold, Cleveland, OH, for Daniels Furniture Pension Plan and Trust, Daniels Furniture Retirement Plan and Trust, Steven Daniels, George Daniels, Electra Acceptance Corporation and Electra Daniels.

Robert J. Hanna, Arter & Hadden, Cleveland, OH and Danny L. Cvetanovich, Arter & Hadden, Columbus, OH, for National Employee Benefit Services, Inc., Bruce C. Kosinski and Beka Agency, Inc.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

Steven Daniels, George Daniels, the Daniels Furniture Pension Plan and Trust, the Daniels Furniture Retirement Plan and Trust, and the Electra Acceptance Corporation (collectively "plaintiffs") bring this action against National Employee Benefits, Inc., Bruce Kosinski, and Beka Agency, Inc. (collectively "defendants"), pursuant to 29 U.S.C. § 1132(a), 28 U.S.C. § 2201, and Ohio common law.

Daniels asserts a nine count complaint[1], alleging generally both that the defendants violated their fiduciary duties as Plan administrator in selling securities and insurance to the Plans while collecting a commission and in conducting the termination of the Pension Plan, as well as that the defendants committed common law fraud in the sale of securities to the Plans. Specifically, the plaintiffs allege in Count One that the defendants engaged in transactions in violation of 29 U.S.C. § 1106(a); in Count Two, that the defendants engaged in transactions in violation of 29 U.S.C. § 1106(b); in Count Three, that the defendants breached their fiduciary duties to the Plans in violation of 29 U.S.C. § 1104(a)(1); in Count Four, that the defendants violated 29 U.S.C. § 1132(c)(1); in Count Five, that each of the defendants is jointly and severally liable for the violations of the others under 29 U.S.C. § 1105(a); in Count Six, that Kosinski and Beka are liable for their knowing participation in NEBS' acts, even if Kosinski and Beka are not fiduciaries; in Count Seven, that the defendants breached fiduciary duties and contractual obligations in terminating the Pension Plan; in Count Eight, that the plaintiffs are entitled to a declaration of their rights under 28 U.S.C. § 2201; and in Count Eleven, that the defendants committed common-law fraud in the sale of securities.

The defendants move for summary judgment, and the plaintiffs oppose that motion. In addition, the plaintiffs move for partial summary judgment, and the defendants oppose that motion. For the reasons enunciated below, both motions are granted in part and denied in part.

## I.

The following facts are not disputed.

Steven and George Daniels are the trustees of the Daniels Furniture Pension Plan and Trust and the Daniels Furniture Retirement Plan and Trust[2], of which Daniels Furniture is the sponsor. NEBS was the Plan

administrator during the events in question. Kosinski owns 50% of NEBS' common stock and is NEBS' president; Kosinski's wife owns the remaining 50% of the shares. The defendants admit that Kosinski is the only person with authority to act on NEBS' behalf. Answer at ¶ 7. Kosinski is the sole shareholder of Beka, Inc., as well as its sole officer and the only person with authority to act on Beka's behalf. Answer at ¶ 11. Beka and NEBS occupy the same office space, share the same business address, and share the same telephone line. *Id.* They also use common letterhead.

In 1984, the plaintiffs contracted with NEBS for the purpose of establishing the two Plans. Acting through NEBS, Kosinski "was responsible for, or contracted for, the drafting of the original plan documents for the Plans." Answer at ¶ 17. The Pension Plan contains a provision identifying the named fiduciaries and allocating responsibility among them:

> The "named Fiduciaries" of this plan are (1) the EMPLOYER, (2) the ADMINISTRATOR, (3) the Trustee and (4) any Investment Manager appointed hereinafter. The named Fiduciaries shall have only those specific powers, duties, responsibilities, and obligations as are specifically given them under this Agreement.... The ADMINISTRATOR shall have the sole responsibility for the administration of this Agreement, which responsibility is specifically described in this Agreement. The TRUSTEE shall have the sole responsibility of management of the assets held under the Trust, except those assets, the management of which has been assigned to an Investment Manager, who shall be solely responsible for the management of the assets assigned to it.

Pension Plan Art. 14.3. Both Plan agreements contain the essentially identical provision defining the administrator's responsibility:

---

1. The plaintiffs have voluntarily dismissed Counts 9 and 10 of their original eleven count complaint; Counts 1 through 8 and 11 remain.

2. The pleadings occasionally refer to the Retirement Plan as the "Profit Sharing Plan." In order to remain consistent, this Court will refer to this Plan as the "Retirement Plan" throughout its Memorandum.

The ADMINISTRATOR may instruct the TRUSTEE as to the investment and reinvestments and/or deposits of all or any part of the TRUST FUND to be made by the TRUSTEE from time to time so long as such investment will not cause this PLAN to lose its qualification under Code Section 401(a).

Pension Plan, Art. 10.2(A)(i); Retirement Plan Art. 11.2(A)(i). No provision of either agreement allocates to NEBS signing authority over the Plans' assets, nor did NEBS ever exercise such authority.

After the establishment of the Plans, NEBS, through Kosinski, began acting as the Plan administrator; this entailed the authority to offer investment "instruction," pursuant to the Plan agreement, although NEBS did not in fact offer investment advice. Kosinski, however, purportedly acting as an individual rather than in his capacity as president of NEBS, did offer advice regarding sales of securities products to the Plans. Beka, also acting solely through Kosinski, offered insurance products to the Plans. Kosinski collected a commission on these sales of securities and insurance products, although he did not collect any salary or commission from NEBS. Until 1989, Kosinski annually met with the plaintiffs to offer investment advice. The Plans relied on this advice exclusively until 1988.

Kosinski formed NEBS in order to provide administrative services to employee benefits plans at low cost. His intention, revealed at a meeting between the Daniels and himself, was that client plans would then engage his services, individually, to sell securities on which he would collect a commission, as well as engage Beka to sell insurance products, on which Beka would collect a commission.

The Daniels, as trustees, informed Kosinski that the Plans sought "safe, conservative, liquid investments." Among the products Kosinski sold to the Plans were interests in Resource Pension Shares 5 ("RPS" 5), a limited partnership. There is a dispute as to whether Kosinski represented that RPS 5 was a liquid, three year investment, and also as to whether such representations were false. There is also a dispute as to whether the plaintiffs ever received a prospectus for this investment.

In 1989, the trustees instructed NEBS to terminate the Pension Plan. During this process, the trustees removed NEBS as administrator of the Retirement Plan, but not of the Pension Plan. This termination was never completed, in that the proper notices were not sent nor was the final distribution of assets performed. Both parties concede that there is a dispute concerning the extent of NEBS' actions and their propriety.

## II.

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law ...

■ The nature of materials properly presented in a summary judgment pleading is set forth in Federal Rule of Civil Procedure 56(e):

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein ... The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

However, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ In reviewing summary judgment motions, this Court must view the evidence in the light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *White v. Turfway Park Racing Assn., Inc.,* 909 F.2d 941, 943–44 (6th Cir.1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. at 2512.

### III.

The plaintiffs claim that the defendants engaged in transactions prohibited by ERISA and breached their fiduciary duties to the Plans. Resolving these questions requires inquiry into several related areas: 1) whether any of the plaintiffs is a fiduciary to the Plans, 2) whether any of the transactions engaged in by a fiduciary defendant was prohibited by ERISA, and 3) whether any fiduciary defendant otherwise breached fiduciary duties. Each of these questions is addressed in turn.

A.

Title 29, U.S.C. § 1002(21)(A) provides in pertinent part:

a person is a fiduciary with respect to a plan *to the extent* (i) he exercises any discretionary authority or discretionary control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. (emphasis added).

Subsection (i) of this provision "imposes fiduciary status on those who exercise discretionary authority, regardless of whether such authority was ever granted." *Olson v. E.F. Hutton & Co., Inc.,* 957 F.2d 622, 625 (8th Cir.1992). Subsection (iii) imposes such status on "those individuals who have actually been granted discretionary authority, regardless of whether such authority is ever exercised." *Id.*

■ Subsection (ii) has been clarified by Department of Labor regulations defining the term "investment advice":

A person shall be deemed to be rendering "investment advice" to an employee benefit plan ... only if:

(i) Such person renders advice to the plan as to the value of securities or other property, or makes recommendations as to the advisability of investing in, purchasing, or selling securities or other property, *and*

(ii) Such person *either directly or indirectly* (*e.g.,* through or together with any affiliate)—

(A) Has discretionary authority or control, whether or not pursuant to agreement, arrangement or understanding, with respect to purchasing or selling securities or other property for the plan; *or*

(B) Renders any advice described [above] on a regular basis to the plan pursuant to a mutual agreement, arrangement or understanding, written or otherwise, between such person and the plan or a fiduciary with respect to the plan, that such services will serve as a primary basis for investment decisions with respect to plan assets, and that such person will render individualized investment advice to the plan based on the particular needs of the plan regarding such matters as, among other things, investment policies or strategy, overall portfolio composition, or diversification of plan investments.

29 C.F.R. § 2510.3–21(c)(1) (emphasis added). Part (ii)(A) serves to make a fiduciary of any person who renders investment advice and has discretionary authority over the plan, regardless of whether this authority is conferred pursuant to agreement or understanding. *Olson*, 957 F.2d at 626. Part (ii)(B) applies only in the presence of a mutual understanding or agreement, although the agreement need not be in writing. *Id.* Thus, an individual who renders investment advice to a plan is a plan fiduciary if he does so pursuant to an agreement that such advice will be the primary basis for plan investment decisions, or if he has discretionary authority over the plan. The individual need not enter this agreement or hold this discretionary authority directly; if, for example, he acts through an affiliate, he has satisfied the definition.

▉ The term "fiduciary" is to be given a broad construction. *Brock v. Hendershott*, 840 F.2d 339, 342 (6th Cir.1988). Notwithstanding this, the phrase "to the extent" in § 1002(21)(A) indicates that an individual is to be considered a fiduciary only as to those functions over which he has discretionary control or authority, whether that authority be conferred *de facto* or pursuant to agreement. *See, e.g., Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 61 (4th Cir.1992) ("court must ask whether a person is a fiduciary with respect to the particular activity at issue"). Thus, an individual can be a fiduciary as to one function but not as to another. In determining the allocation of discretion for purposes of assigning fiduciary status, the court is to look first to the plan documents themselves. *See, e.g., Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989). The parties' course of conduct, however, is also relevant in determining whether the individual in fact exercised discretionary authority or control that was not conferred upon him by agreement. An individual who merely performs purely ministerial functions is not a fiduciary. *Baxter v. C.A. Muer Corp.*, 941 F.2d 451, 455 (6th Cir.1991).

·Whether any of the defendants here was a plan fiduciary itself entails two separate, though related, inquiries: 1) the extent to which NEBS, as Plan administrator, was a fiduciary, and 2) whether Kosinski and Beka were fiduciaries as a result of their conduct toward the Plans or their relationship to NEBS.

#### 1. *NEBS.*

▉ Section 1102(a)(1) requires every instrument establishing an ERISA plan to "provide for one or more named fiduciaries who jointly and severally shall have authority to control and manage the operation and administration of the plan." Such an instrument may "expressly provide for procedures ... for allocating fiduciary responsibilities (other than trustee responsibilities) among named fiduciaries." 29 U.S.C. § 1105(c)(1). Thus, the plan documents must designate a named fiduciary, but need not make all named fiduciaries responsible for all plan functions; instead, the document can name fiduciaries for separate functions. *Leigh v. Engle*, 727 F.2d 113, 134 (7th Cir.1984); *but see Arakelian v. National Western Life Ins. Co.*, 680 F.Supp. 400, 404 (D.C.D.C.1987) (named fiduciary is fiduciary for all purposes). This reading of the statute is confirmed by the labor regulations, a provision of which states:

> If named fiduciaries of a plan allocate responsibilities in accordance with a procedure for such allocation set forth in the plan, a named fiduciary will not be liable for acts and omissions of other named fiduciaries in carrying out fiduciary responsibilities which have been allocated to them [except as provided in the statute].

29 C.F.R. § 2509.75–8, FR–13 A. Section 1102(1) notwithstanding, then, a "named" fiduciary is not necessarily a fiduciary for all purposes, provided that the plan documents expressly designate separate functions.

▉ Here, Art. 2.1(E) of the Pension Plan and 2.1(C)(i) of the Retirement Plan name NEBS as the administrator. Art. 14.3 of the Pension Plan expressly designates the employer, the administrator, the trustee, and any investment manager as "named" fiduciaries. This provision also allocates authority among the named fiduciaries. To NEBS is assigned the responsibility for "administration," an obligation defined elsewhere in the

document. To the Trustees is assigned the sole responsibility of managing trust assets, except to the extent this task is delegated to an investment manager. At first glance, then, the Plan documents expressly make the trustees, not NEBS, responsible for management of the trust assets.

Art. 10.2(A)(i) of the Pension Plan and Art. 11.2(A)(i) of the Retirement Plan muddy the issue considerably, however. Both of these provisions make the Administrator, NEBS, responsible in its discretion to "instruct" the Trustees as to the investment of trust assets. This provision thus serves to re-allocate at least a portion of the responsibility for management of the trust funds, making both the Administrator and Trustee responsible for investing trust assets.

NEBS argues that the term "instruct" does not have this effect, because it means that NEBS may inform the trustees how to perform the mechanics of investing, rather than advising or directing the trustees as to which investments to make. This, however, is far from clear from the language of the document, which NEBS had responsibility for drafting. The provision merely states that NEBS may "*instruct* the Trustees *as to* the investment" of the trust's assets. The provision goes on to qualify this statement with the caveat that such instruction is not to result in a violation of § 401(a) of the Internal Revenue Code. If the term had the meaning NEBS suggests, this latter caveat would be rendered meaningless; there is no need for a provision conditioning NEBS' power to direct the investment of Plan funds on compliance with § 401(a) if NEBS has no such power. This suggests that the term means that NEBS has discretion to direct the Trustees in their investment activities. At best, NEBS has demonstrated an ambiguity in the document. Such ambiguities in plan documents are to be construed against the drafter. *Bullwinkel v. New England Mutual Life Ins. Co.*, 18 F.3d 429, 431 (7th Cir.1994). Consequently, this Court construes this provision to confer upon NEBS discretionary authority to direct the investment of trust funds.

NEBS, therefore, was a fiduciary with respect to the investment of Plan assets.

### 2. *Kosinski and Beka*

■ As discussed above, § 1002(21)(A)(ii) imposes fiduciary status on any individual who regularly gives investment advice to a plan if that individual does so pursuant to any agreement—whether written or not—to the effect that such advice will be the primary basis for plan investments or if he has discretionary control over the plan. Here, both Beka and Kosinski regularly offered investment advice to the Plans. Kosinski advised the Plans as to investments in securities, and Beka advised the Plans as to investments in insurance products. None of the parties disputes that, from 1984 through 1989, Kosinski annually met with the trustees on behalf of himself and Beka to suggest investments for the coming year.

The remaining question is whether this advice was rendered pursuant to an agreement that it would be the primary basis for plan investments, or whether either Kosinski or Beka had actual discretionary control or authority over the Plans. Neither party disputes that Kosinski caused NEBS to enter into an agreement to become Plan administrator for the purpose of encouraging the Plans to use Kosinski's and Beka's investment services. It is also undisputed that the Plans accepted all of Kosinski's and Beka's investment advice offered from the inception of the Plans' association with NEBS until 1988. The Plans, in fact, neither received nor solicited investment advice from any other source during this period. Given this, the parties' course of conduct toward each other establishes that the Plans on the one hand, and Kosinski and Beka on the other, shared a mutual understanding that advice offered by Kosinski and Beka would serve as the primary basis for Plan investment decisions. Kosinski and Beka, therefore, were Plan fiduciaries with respect to the investment of Plan funds pursuant to § 1002(21)(A)(ii).

■ An additional basis on which fiduciary status can be imposed on one individual is his relationship to a second individual who is a fiduciary. Under certain conditions, courts will disregard the corporate form in determining the fiduciary status of an individual.

*See Lowen v. Tower Asset Management, Inc.,* 829 F.2d 1209 (2nd Cir.1987); and *Reich v. Lancaster,* 843 F.Supp. 194 17 E.B.C. 1629 (N.D.Tex.1993).[3] "The Supreme Court has 'consistently refused to give effect to the corporate form where it is interposed to defeat legislative policies.'" *Lowen,* 829 F.2d at 1220, *citing First Nat'l City Bank v. Banco Para el Comercio Exterior de Cuba,* 462 U.S. 611, 628, 103 S.Ct. 2591, 2601, 77 L.Ed.2d 46 (1983). The inquiry into whether this is the case "generally gives less deference to the corporate form than does the strict *alter ego* doctrine of state law." *Lowen,* 829 F.2d at 1220. In the context of ERISA, "[c]ourts have without difficulty disregarded form for substance where ERISA's effectiveness would otherwise be undermined." *Id.*

In *Reich,* for example, a single individual defendant was the owner and chaired the board of one corporation, which wholly owned a subsidiary corporation. The defendant solely controlled both corporations. After finding that the parent corporation was a plan fiduciary, the court found that the individual defendant and the subsidiary were fiduciaries as well. *Reich,* 843 F.Supp. at 197–98. The court noted that the two companies "were the means by which [defendant] performed the services he provided to the Fund." *Id.,* at 197. The companies shared the same office and employees, and were run entirely by the defendant and his children. Consequently, "for purposes of ERISA, [the defendant and the two companies] are one and the same and ... each is a fiduciary." *Id.,* at 197–98.

The relevant facts of this case are closely analogous to those present before the *Reich* court. Kosinski was the sole shareholder of Beka, its only officer, and the only individual authorized to act on its behalf. Kosinski shared ownership of NEBS with his wife, was its president, and was the only person with authority to act on its behalf. Consequently, all the Plans' dealings with the two corporations and Kosinski were, in actuality, through Kosinski himself. In addition, NEBS, Kosinski, and Beka shared the same office space, the same office business address, the same business telephone line, and the same letterhead. Bearing in mind the Second Circuit's warning that "[p]arties may not use shell-game-like maneuvers to shift fiduciary obligations to one legal entity while channeling profits from self-dealing to a separate legal entity under their control," *Lowen,* 829 F.2d at 1220, this Court finds that Kosinski and Beka are fiduciaries to the Plans, with respect to investment of Plan assets, as a result of their symbiotic relationship to NEBS, a Plan fiduciary.[4]

### 3. Summary

NEBS is a Plan fiduciary with respect to investment of Plan funds as a result of the discretionary authority conferred upon it by the Plan documents, regardless of whether this authority was ever exercised, pursuant to § 1002(21)(A)(iii). Kosinski and Beka are Plan fiduciaries with respect to the investment of Plan assets for both of two reasons: 1) under § 1002(21)(A)(ii), they regularly rendered investment advice pursuant to an agreement that such advice would form the primary basis for Plan investment decisions, and 2) under ERISA principles, they are the *alter egos* of NEBS, a Plan fiduciary.

### B.

Title 29 U.S.C. § 1104 provides in relevant part that "a fiduciary shall discharge his duties with respect to a plan *solely* in the interest of the participants and beneficiaries and ... *for the exclusive purpose* of ... providing benefits to participants and their

---

**3.** The *Lowen* court so held in the context of a decision finding that a non-fiduciary could be held liable for knowingly participating in a fiduciary's breach of duty. Recent Supreme Court *dicta* strongly suggests that this theory of liability is not available. *Mertens v. Hewitt Associates,* — U.S. —, —, 113 S.Ct. 2063, 2067, 124 L.Ed.2d 161 (1993). The scope of *Lowen*'s language, however, extends beyond this theory of liability to the issue here: whether one party is a fiduciary by virtue of his *alter ego* relationship to a corporation which is a fiduciary. *Mertens* does not address this question.

**4.** This holding renders Count Six moot, because that count premises liability on Kosinski's and Beka's status as nonfiduciaries. This Court need not, and does not, reach the issue of a nonfiduciary's liability for knowing participation in the breach of a fiduciary's duty.

beneficiaries [and] defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a) (emphasis added). Section 1106 defines certain conduct that constitutes a breach of this duty and prohibits two distinct, though overlapping, broad categories of transactions: those between a plan and a party in interest, and those between a plan and a plan fiduciary. Section 1106(a)(1)(D) provides in pertinent part:

A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan.

Section 1002(14) provides in relevant part: "The term 'party in interest' means, as to an employee benefit plan—(A) any fiduciary . . . of such plan." Section 1106(a)(1) excepts from its prohibition those transactions set out in § 1108. Among these is "[c]ontracting or making reasonable arrangements with a party in interest for office space, or legal, accounting, or other services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefore." 29 U.S.C. § 1108(b)(2).

Section 1106(b) provides that a fiduciary shall neither, among other things, "(1) deal with the assets of the plan in his own interest or for his own account, . . . [or] (3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan." 29 U.S.C. §§ 1106(b)(1) and (3). This section, unlike § 1106(a), admits of no exceptions on its face. *See Gilliam v. Edwards,* 492 F.Supp. 1255, 1263 (D.C.N.J.1980); *see also* 29 C.F.R. § 2550.-408b–2(a).

Because all fiduciaries are parties in interest within the meaning of § 1002(14)(A), any transaction between a plan and a fiduciary is also a transaction between a plan and a party in interest. Thus, §§ 1106(a) and 1106(b) overlap. "The prohibitions of section 406(b) supplement the other prohibitions of section 406(a) of the Act by imposing on parties in interest who are fiduciaries a duty of undivid-ed loyalty to the plans for which they act." 29 C.F.R. § 2550.408b–2(e). Consequently,

A fiduciary may not use the authority, control, or responsibility which makes such a person a fiduciary to cause a plan to pay an additional fee to such fiduciary (or to a person in which such fiduciary has an interest which may affect the exercise of such fiduciary's best judgment) to provide a service. Nor may a fiduciary use such authority, control or responsibility to cause a plan to enter into a transaction involving plan assets whereby such fiduciary . . . will receive consideration from a third party in connection with such transaction.

29 C.F.R. § 2550.408b–2(e)(1). Thus, § 1108 does not apply to § 1106(b), because fiduciaries are prohibited from receiving consideration—whether or not reasonable—from a third party for transactions involving the plan to which they owe their fiduciary obligations.

In addition, § 1108 does not apply to § 1106(a) where the party in interest is a fiduciary who receives compensation from a source other than a plan. *See* 29 C.F.R. § 2550.408b–2(a). Thus, where, as here, a party in interest receives a commission for dealing with plan assets from a third party, § 1108 does not exempt the transaction from prohibition under § 1106(a).

▪ Here, NEBS, Kosinski, and Beka were all Plan fiduciaries and parties in interest with respect to the investment of Plan funds. Kosinski and Beka each collected a commission from the sale of securities or insurance to the Plan. This commission constituted payment received from a third party in consideration for a transaction involving Plan assets. Kosinski and Beka, therefore, breached their fiduciary responsibilities to the Plan by engaging in transactions prohibited by § 1106(a) and (b).

Kosinski and Beka argue that § 1106(b) prohibits only those transactions between a plan and a fiduciary in which the fiduciary receives compensation directly from the plan, citing 29 C.F.R. § 2550.408b–2(e)(3) in support of this proposition. This reading conflicts directly with the above-quoted language of § 2550.408b–2(e)(1). More importantly, the defendants have misrepresented this pro-

vision, which states that there is no violation "without the receipt of compensation or other consideration." 29 C.F.R. § 2550.408b–2(e)(3). This regulation simply does not exempt transactions in which compensation was received from a third party. Instead, it stands for the self-evident proposition that, absent receipt of compensation or consideration—from whatever source—as a result of a transaction involving Plan assets, a fiduciary cannot be held to have engaged in self-dealing.

 A fiduciary is jointly and severally liable for the breaches of other fiduciaries when, *inter alia,* he "has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach." 29 U.S.C. § 1105(a)(3). Here, NEBS and Beka were both exclusively controlled by Kosinski, and were *alter egos* of Kosinski for purposes of ERISA. Therefore, they each had knowledge of the other's breaches. Although NEBS itself did not engage in prohibited transactions in breach of its fiduciary duty, it is jointly and severally liable, along with Kosinski and Beka, for their breaches of duty.

### C.

The plaintiffs allege that NEBS breached its fiduciary duties in failing properly to terminate the Pension Plan. They move for partial summary judgment on the question of whether NEBS was obligated to perform this function, but not on the question of whether NEBS in fact properly performed the termination. The defendants' motion for summary judgment seeks judgment on both questions, but in their later briefs, the defendants maintain that the issue is not yet ripe for review. Discovery on this issue, apparently, was not yet complete at the time the parties filed the motions at issue here.

Both parties have conceded at various points that material facts remain in dispute regarding whether NEBS properly terminated the Pension Plan. This Court, therefore, need not reach the issue of whether NEBS was obligated to terminate the Pension Plan properly, absent evidence of NEBS' conduct. Both defendants' motion for summary judg-ment and plaintiffs' motion for partial summary judgment are denied as to this claim.

### IV.

 Title 29 U.S.C. § 1132(c) provides:

Any administrator ... who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days of such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

Section 1132(a)(1)(A) empowers only participants or beneficiaries to bring an action for statutory damages to enforce this provision; § 1132(a)(3) empowers a fiduciary to bring an action only for equitable relief to enforce the provision.

Both Steven and George Daniels bring this action in their capacity as trustee of the two Plans. Amended Complaint, at caption. Although both of the Daniels are Plan participants who would be empowered to sue for relief under § 1132(c), neither Steven nor George Daniels sues in his capacity as a participant or beneficiary. The Daniels' action for recovery of statutory damages is therefore barred, and the defendants are entitled to judgment as a matter of law on this claim.

As fiduciaries, the Daniels are empowered to seek injunctive relief to enforce the provision. There is a dispute, however, regarding whether required information was actually provided upon request. Specifically, the plaintiffs offer evidence that the Retirement Plan documents were not provided to Steven Daniels upon his request. The defendants' motion for summary judgment on this claim is accordingly denied, to the extent the claim seeks equitable relief.

## V.

■ In Count XI, the plaintiffs assert a claim for common law fraud in the sale of securities. The defendants seek summary judgment on this claim, both on the ground that the action is barred by the applicable statute of limitation and on the ground that the defendants made no false representations of material fact.

Ohio Rev.Code § 2305.09 provides that an action for fraud "shall be brought within four years after the cause thereof accrued," and that the cause "shall not accrue ... until the fraud is discovered." In interpreting this statute, the Ohio Supreme Court has held: "Although a cause of action for the tort of fraud must be brought within four years from the time the cause accrued, the cause does not accrue until the fraud and the wrongdoer are *actually* discovered." *Shover v. Cordis Corp.*, 61 Ohio St.3d 213, 217, 574 N.E.2d 457, 461 (1991) (emphasis added).

Here, the plaintiffs allege that the defendants fraudulently misrepresented the nature of the RPS 5 product that the plaintiffs bought in 1987. The original complaint was filed on September 28, 1992. The plaintiffs' claim would thus be time-barred if the fraud were *actually* discovered in 1987. The defendants argue that any fraud would have been apparent through a review of the prospectus for RPS 5, so the plaintiffs did or should have discovered any fraud at the time of the purchase. Both parties, however, present contradictory evidence regarding whether the plaintiffs in fact received this prospectus. Consequently, a genuine issue of material fact exists concerning the time at which the plaintiffs discovered the existence of any fraud. Summary judgment on the ground that the fraud claim is time-barred is therefore inappropriate.

Similarly, whether any fraud in fact occurred is a genuinely disputed issue. The defendants offer evidence tending to show that they provided the plaintiffs a copy of the prospectus, that the prospectus disclosed all relevant information concerning the investment, and that RPS 5 was in fact a liquid, three year investment. The plaintiffs, on the other hand, offer evidence tending to show that they did not receive a copy of the pro-

spectus, that the defendants represented RPS 5 to be a liquid, three year investment, and that RPS 5 was not, in fact, a liquid or three year investment. Given that the plaintiffs specifically sought such an investment, the alleged representations concerning the liquidity and duration of RPS 5 were certainly material to their investment decision.

Material issues of disputed fact remain as to whether the defendants committed any fraud in connection with the sale of RPS 5 to the plaintiffs. Consequently, the defendants' motion for summary judgment on Count Eleven is denied.

## VI.

This Court finds that there are no disputed issues of material fact regarding the defendants' fiduciary status and holds that each defendant was, as a matter of law, a plan fiduciary with respect to the investment of plan funds. This Court also finds that there are no disputed issues of material fact concerning whether the defendants breached their fiduciary duties in engaging in prohibited transactions, and holds that, as a matter of law, such breaches did occur. However, genuine and material factual disputes remain as to whether the defendants improperly terminated the Pension Plan, withheld Plan documents, and knowingly made material misrepresentations connected to the sale of securities. This Court also finds that, as a matter of law, the plaintiffs cannot maintain an action for damages to remedy any failure by the defendants timely to provide Plan documents.

Accordingly, the plaintiffs' motion for partial summary judgment is granted in part and denied in part, as is the defendants' motion for summary judgment. Judgment is entered in favor of the plaintiffs on Counts One, Two, Three, and Five, and also on Count Eight, to the extent that this Memorandum and Order serves as a declaration of the plaintiffs' rights. Judgment is entered in favor of the defendants on Count Four, to the extent that the count seeks monetary damages. Count Six is dismissed as moot.

This case is set for a status conference on August 19, 1994 at 4:00 p.m., Room 212 of the

U.S. Courthouse, 201 Superior Avenue, Cleveland.

IT IS SO ORDERED.