William J. ELLZEY, M.D., as Trustee of the William J. Ellzey, M.D., P.C., Pension and Profit Sharing Plans, Plaintiff,

v.

Daniel CARTER, Michael Levine, Levine Life Associates, Inc., Levine Financial Services, Inc., and Retirement Planning Associates Inc., Defendants.

No. 2:92cv683 (DJS).

United States District Court, D. Connecticut.

Oct. 10, 1995.

Joseph V. Meaney, Jr., Margaret Fogerty Rattigan, Cranmore, Fitzgerald & Meaney, Hartford, CT, for William J. Ellzey, M.D.

Duncan B. Hume, Stamford, CT, for Daniel Carter, Michael Levine, Levine Life Associates, Inc., Levine Financial Services, Inc., Retirement Planning Associates.

**MEMORANDUM OPINION AND ORDER**

SQUATRITO, District Judge.

Plaintiff filed this action on August 12, 1992, alleging that Defendants had violated their fiduciary obligations under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* The case is now before the court on cross motions for summary judgment. The sole issue presented is whether the Defendants were fiduciaries within the meaning of 29 U.S.C. § 1002(21)(A).

## I. STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed. R.Civ.P. 56(c). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). It is the substantive law governing the case that identifies those facts which are material on motions for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258, 106 S.Ct. 2505, 2515, 91 L.Ed.2d 202 (1986). The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1600, 26 L.Ed.2d 142 (1970).

In assessing the record to determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14; *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir.1989); *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 57 (2d Cir.1987). *See United States v. Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962) (per curiam).

On a motion for summary judgment, a court cannot try issues of fact; it can only determine whether there are issues to be tried. *Donahue,* 834 F.2d at 58; *see Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–

14. With these principles in mind, the court will turn to the specifics of this case.

## II. FACTS

The following facts are not in dispute. Plaintiff decided to start a pension plan and a profit sharing plan in 1979 and 1984, respectively (hereinafter collectively the "Plans"). Daniel Carter was recommended by Plaintiff's accountant to design both Plans. The Plans are defined contribution plans within the meaning of 29 U.S.C. § 1002(34).

The individual defendants are Daniel Carter ("Carter") and Michael Levine ("Levine"). The corporate defendants are Levine Financial Services ("LFS") and Retirement Planning Associates ("RPA").[1] Defendant Carter is a principle and vice-president of LFS as well as the president and a director of RPA. Defendant Levine owns a one-third interest in RPA. Levine is the principal employee as well as an officer and director of LFS. His activities in LFS are limited to recommending certain life insurance policies, annuities and/or investment products to clients. Carter is trained in the investment objectives of certain ERISA plans, including "defined contribution plans." (See Defs.' Mot.Supp.Summ.J. at 2–3). The Defendants, for purposes of this motion, are to be considered one party with the same interests and liabilities. (Id. at 5).

From 1979 to 1991 Defendants performed administrative duties for the Plans. (Id. at 3). During that time, Defendants were also consulted with respect to the investment of the Plans' assets. (Pl.'s Mem.Supp.Summ.J., Ex. A, Dep. of Daniel Carter, at 25, 27; Ex. C, Dep. of Dr. Ellzey, at 39). RPA was paid yearly for the services it rendered. Two to three times a year, Carter would recommend investments for the accrued assets. (Id., Ex. A, Dep. of Daniel Carter, at 25). Defendants were aware that Plaintiff was not receiving investment advice from any other source. (Id. at 26). Carter used a rating system of one to ten, with ten being the least risky and one being the most risky. (Id. at 28). During this time, not one of Defendants' recommendations was rejected by Plaintiff. (Id. at 27).

In 1984, Carter recommended that Plaintiff invest in Colonial Reality Corp. (See Answer ¶ 17(d)). He gave this an investment rating of eight on his one-to-ten scale. (Pl.'s Mem.Supp.Summ.J., Ex. A, Dep. of Daniel Carter, at 29). By the end of 1990, the Plans had invested over $220,000 in Colonial Realty, or fifty-five percent of the total assets in the Pension Plan and forty percent of the total assets in the Profit Sharing Plan. (See Answer ¶ 1).

LFS was paid a five percent finders fee for every dollar invested in Colonial Reality Corporation. (Pl.'s Mem.Supp.Summ.J., Ex. A, Dep. of Daniel Carter, at 23–24, 30–32). At no time prior to the termination of the relationship did the Defendants reveal this information to Plaintiff. (Id. at 23–25). Plaintiff brought this claim on behalf of the Plans, alleging that the Defendants failure to disclose this information amounted to a breach of their fiduciary duty as defined by ERISA. Defendants contend that they are not liable because they performed purely ministerial functions and therefore were not fiduciaries as defined by ERISA.

## III. DISCUSSION

■ A person is a fiduciary under ERISA:

to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has authority to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A) (1988). " 'Congress intended the term [fiduciary] to be broadly construed.' " Blatt v. Marshall & Lassman, 812 F.2d 810, 812 (2d Cir.1987). "Whether a person is a fiduciary is determined by an objective standard; it matters not that the person may subjectively believe that he or she is not a fiduciary as long as the require-

---

1. Defendant Levine Life Associates, Inc. is another name for Levine Financial Services.

ments under the regulations are met." *Farm King Supply, Inc., Integrated Profit Sharing Plan & Trust v. Edward D. Jones & Co.,* 884 F.2d 288, 292–93 (7th Cir.1989) (citing cases).

■ Subsections (i) and (iii) of § 1002(21)(A) impose a fiduciary duty upon those who either exercise discretionary control or have been granted such control, while subsection (ii) of that section imposes the duty upon those who render investment advice for a fee. Plaintiff argues that the Defendants were plan fiduciaries within the meaning ERISA because they recommended investment opportunities on a regular basis which Plaintiff "rubber stamped." Defendants, on the other hand, argue that they performed purely ministerial functions for the Plans and that they had no discretionary authority. They assert that, because discretion is the *"sin qua non* of fiduciary duty," the absence of any discretion over the control of either Plan defeats the Plaintiff's claims. *See Blatt,* 812 F.2d at 812 (noting performance of purely ministerial functions does not confer fiduciary status).

The Department of Labor has clarified the meaning of subsection (ii) by defining the term "investment advice." One renders investment advice if:

(i) such person renders advice to the plan as to the value of securities or other property, or makes recommendation as to the advisability of investing in, purchasing, or selling securities or other property; and

(ii) such person either directly or indirectly (e.g., through or together with any affiliate)

(A) has discretionary authority or control, whether or not pursuant to agreement, arrangement or understanding, with respect to purchasing or selling securities or other property for the plan; or

(B) renders any advice described in ¶ (c)(1)(i) of this section on a regular basis to the plan pursuant to a mutual agreement, arrangement or understanding, writ-

ten or otherwise, between such person and the plan or a fiduciary with respect to the plan, that such services will serve as a primary basis for investment decisions with respect to plan assets, and that such person will render individualized investment advice to the plan based on the particular need of the plan regarding such matters as, among other things, investment policies or strategy, overall portfolio composition, or diversification of plan investments.

29 C.F.R. § 2510.3–21(c)(1) (1994); *see Farm King,* 884 F.2d at 291; *Daniels v. National Employee Benefit Servs.,* 858 F.Supp. 684, 689 (N.D.Ohio 1994).

The issue in this case, therefore, is whether the defendants rendered advice pursuant to an agreement whereby their advice would serve as a primary basis for plaintiff's investments. *Farm King,* 884 F.2d at 293. This agreement need not be in writing; courts have recognized that such an agreement may arise from the parties' course of conduct. *Thomas, Head & Greisen Employees Trust v. Buster,* 24 F.3d 1114, 1119 (9th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 935, 130 L.Ed.2d 881 (1995); *Olson v. E.F. Hutton & Co.,* 957 F.2d 622, 626 (8th Cir.1992); *Daniels,* 858 F.Supp. at 691; *Fechter v. Connecticut Gen. Life Ins. Co.,* 800 F.Supp. 182, 197 (E.D.Pa.1992). Since no written agreement was entered into between any of the Defendants and the Plaintiff, the court must determine whether, based on their course of conduct, such an agreement existed.

■ In determining whether such an agreement existed in this case, the court must look to the nature and duration of the relationship and weigh various factors. These factors include: the regularity of the advice;[2] the defendants' knowledge of the plans;[3] the plaintiff's expertise in financial matters;[4] whether the plaintiff was receiving any other investment advice as to the plan assets;[5] whether the plaintiff ever rejected

---

2. 29 C.F.R. § 2510.3–21(c)(1) (1994).

3. *Farm King,* 884 F.2d at 293.

4. *Id.* at 294; *Reich v. Lancaster,* 843 F.Supp. 194, 198 (N.D.Tex.1993), *aff'd,* 55 F.3d 1034 (5th Cir. 1995).

5. *Schloegel v. Boswell,* 994 F.2d 266, 273 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct.

any of defendants' proposed investments;[6] and whether the plaintiff believed that an agreement had been reached based on the conduct of the defendants.[7]

The undisputed facts show that Defendants set up the Plans and administered them for twelve years. Carter advised Plaintiff approximately three times a year on how to invest the money that had accrued. This advice was specifically tailored to the needs of Plaintiff's Plans. Carter rated the relative safety of the investments he recommended on a scale of one to ten. Moreover, the Defendants knew that Plaintiff was not a sophisticated investor and that he was receiving no other investment advice. Further, they knew that Plaintiff had never refused one of their investment suggestions. Plaintiff believed that the information Defendants were giving him was investment advice upon which he could rely. Finally, Plaintiff was paying Defendants yearly for their services. In light of all these factors, the court finds that there existed an agreement between the parties whereby the Defendants served as a primary basis for investment decisions. The Defendants, therefore were fiduciaries to the Plans as that term is defined under 29 U.S.C. § 1002(21)(A) and 29 C.F.R. § 2510.3–21(c)(1)(ii)(B).

## IV. CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment (**document # 23**) is hereby **GRANTED** and the Defendants' motion for summary judgment (**document # 28**) is hereby **DENIED.**

It is so ordered.

---

440, 126 L.Ed.2d 374 (1993); *Daniels,* 858 F.Supp. at 691.

**6.** *Daniels,* 858 F.Supp. at 691.

**7.** *Farm King,* 884 F.2d at 294.